ROBERTSON *v.* STATE.

4461                     206 S. W. 2d 748

Opinion delivered November 17, 1947.

Rehearing denied January 12, 1948.

*Botts & Botts,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

SMITH, J. Appellant was found guilty of voluntary manslaughter on his trial under an information charging him with the crime of murder in the first degree, alleged to have been committed by killing one W. J. Jett. It was alleged that appellant had killed Jett "by then and there striking and beating the said W. J. Jett on the head with some blunt instrument, to the Prosecuting Attorney unknown."

A petition for change of venue was filed, properly supported by the affidavits required by the statute. There were six of these affiants, four of whom were summoned and appeared before the court for examination, a practice approved in numerous cases. A *prima*

*facie* showing was made requiring that the venue be changed, but a number of other witnesses were called who expressed the opinion that no such prejudice existed against appellant as would prevent him from obtaining a fair and impartial trial in the county in which he had been informed against.

Prior to the adoption at the 1936 General Election of Initiated Act No. 3, entitled, ''An Act to Amend, Modify and Improve Judicial Procedure and the Criminal Laws, and for other Purposes,'' it would have been improper for the court to have heard other testimony as to the truth of the statements of the affiants supporting the petition for a change of venue. The court could have inquired only into the question of the credibility of the affiants. For that purpose, they could be summoned into court and examined as to the extent and source of their information upon which their opinions were based, and independent testimony might also have been heard as to the credibility of the affiants, all for the purpose only of determining the question of the credibility of the affiants, and unless it was found as a result of this examination, or independent testimony that the affiants were not credible the court was without discretion in ordering the venue changed, and would have been required to make that order.

This Initiated Act No. 3 (Acts 1937 p. 1384) made many changes in criminal procedure and the portion thereof relevant here appears as § 3918 of Pope's Digest, and reads as follows: ''The application of the defendant for such order of removal shall be by petition setting forth the facts on account of which the removal is requested; and the truth of the allegations in such petition shall be supported by the affidavits of two credible persons who are qualified electors, actual residents of the county and not related to the defendant in any way. Reasonable notice of the application shall be given to the attorney for the State. The court shall hear the application and, after considering the facts set forth in the petition and the affidavits accompanying it and any other affidavits or counter affidavits that may be filed

after hearing any witnesses produced by either party, shall either grant or refuse the petition according to the truth of the facts alleged in it and established by the evidence."

This act was passed pursuant to the authority of § 10 of Art. 2 of the Constitution which provides that "the venue (of criminal actions) may be changed to any other county of the judicial district in which the indictment is found, upon the application of the accused, in such manner as now is, or may be, prescribed by law."

So, therefore, the jurisdiction of trial courts has been enlarged to permit an inquiry which before the adoption of the Initiated Act No. 3 was not permissible. Pursuant to this enlarged authority the court heard the testimony of other witnesses besides that of the supporting affiants and announced the conclusion that appellant could obtain a fair trial in that jurisdiction. We may therefore review only the exercise of the judicial discretion vested in the court and in view of the conflicts in the testimony, we are unable to say that any abuse of this discretion was shown. It follows from these views that the opinion in the case of *Bailey* v. *State*, 204 Ark. 376, 163 S. W. 2d 141, is approved, while the opinion in the case of *Fancher* v. *State*, 205 Ark. 1085, 172 S. W. 2d 680, is, so far as it conflicts with this opinion, disapproved.

The deceased Jett had been beaten to death as alleged in the information, by a blunt instrument, very probably the barrel of a gun found near the body of the deceased, and the testimony supports the finding that appellant was the user of this weapon, indeed this appears not be questioned. Defendant did not admit or deny that he had employed the weapon, but testified that he had no recollection or knowledge whatever of the killing, and he interposed the defense of not guilty by reason of insanity. The trial court brushed this defense aside and refused to submit it to the jury as will presently appear.

There was no testimony of any existing ill will between deceased and appellant, although there was testi-

mony that they had a quarrel over some trifling matter in 1942, but it appears that this had been forgiven and forgotten by both deceased and appellant.

Appellant was addicted to the excessive use of intoxicants and it was shown that when he drank at all, he drank excessively. He testified that to enable him to control this habit he had voluntarily enlisted in the army and that he had served in the armed forces for a period of 20 months, of which 14 were spent in overseas service. The testimony on the part of the state as elicited from appellant's cross-examination was that he had enlisted to terminate a criminal procedure for an act of violence probably committed while under the influence of liquor.

Appellant went to the home of the deceased to employ him in harvesting a crop of rice, and when he arrived at deceased's home he found a drunken party assembled. Appellant first refused to drink, but through the insistence of deceased's wife he began to drink and soon became very drunk. Evidently deceased and appellant led in the drunken arguments, and all the party finally left except deceased and appellant. No one witnessed the killing, but a woman referred to as deceased's wife, testified that she saw appellant trying to awaken deceased, by pommelling his head against the floor. But this evidently was not the cause of death. As appellant tried to arouse deceased he was saying, ''Get up, we are in Europe and must fight.'' The testimony of this woman was somewhat incoherent and full of palpable contradictions. Deceased had divorced her, as shown by court records, yet she denied the divorce and was living in illegal cohabitation with Jett. She denied that she drank at all, or that she was drunk when all the persons present testified that she not only drank, but was drunk. Nevertheless, the weight to be given her testimony was a question for the jury and its effect is that appellant must have killed deceased as no one else was present who could have done so.

Mrs. Jett went to the home of one Kennedy, a neighbor, to report the trouble she had seen. When Kennedy

went to Jett's home he found the deceased on the floor, and defendant asleep on the bed a few feet away, with a single barrel shot gun between them. When Kennedy aroused appellant he found that he had no recollection of what had happened and did not know that Jett had been attacked or was dead. The witness went for a doctor, although Jett was dead, and he reported what he had seen to the sheriff, and when he returned appellant had gone home. Appellant did not know how he got home, and it was testified that he fell off his horse when he mounted it. The sheriff went to appellant's home where he found him groggy and asleep. The doctor who accompanied the sheriff to Jett's home testified that the wounds on Jett's head indicated that he had been beaten to death. Another witness who had accompanied the witness to Jett's house testified that Jett was on the floor, very bloody, and that appellant was on the bed asleep, unconscious, and that he took no notice whatever of anyone around.

A Dr. Davis was called to testify as an expert to answer a hypothetical question as to appellant's sanity, based on the facts above recited, but the court declined to permit the witness to answer the question.

At the conclusion of the testimony, the court gave the instructions usually given in homicide cases, but he refused to give any instruction on the question of insanity. Error is assigned in the refusal of the court to permit the doctor to answer the hypothetical question, and also in the refusal to charge the jury as to the insanity of the appellant being a defense to the crime.

Both these objections would be well taken if there had been testimony tending to show that appellant was insane. There was no contention however, that appellant was an insane man. The contention is that he became so drunk that he did not know what he did and that he was not aware that he was doing wrong. Here the testimony is that appellant voluntarily became drunk, although he testified that he was induced to drink by the persuasion of Mrs. Jett and the conviviality of the crowd he found in Jett's home, and before he got sober he had

beaten Jett to death, a fact of which he was wholly un-aware until so advised.

The opinion in the case of *Byrd* v. *State*, 76 Ark. 286, 88 S. W. 974, written by Judge Riddick in his lucid style, covers this case so fully that we quote from it rather extensively. There as here the presiding judge refused to permit witnesses who saw the killing to express the opinion that the accused was insane. In holding that no error was committed in excluding this testimony, it was there said:

"But if we assume that these witnesses would have answered that the defendant was insane, this testimony would have shown nothing more than that the use of intoxicating liquor had a very bad effect on the defendant, and that they produced in him a species of temporary insanity; but this kind of insanity is ordinarily no excuse for crime.

. . . . .

"In this case the fact that the defendant was intoxicated at the time he assaulted Burnsides may have raised in the minds of the jury a reasonable doubt as to whether there was a specific intent to kill, and led them to reduce the crime to murder in the second degree. But no specific intent to kill is necessary to constitute the crime of murder in the second degree, under our statute, and the law is that 'the intention to drink may fully supply the place of malice aforethought;' so that, if one voluntarily becomes too drunk to know what he is about, and then without provocation assaults and beats another to death, he commits murder the same as if he was sober. 1 Bishop, New Crim. Law, § 401.

"Now, in this case defendant was not at the time of the killing laboring under delirium tremens or other form of more or less fixed insanity caused by continued intoxication. The insanity that he was laboring under, if any, was the immediate result of the intoxicating liquor he drank on the day of the homicide. In other words, he was simply drunk from effects of liquor which he had voluntarily taken. While in that condition, he met this

infirm old man, towards whom it seems that he entertained some grudge on account of a suspicion that the old man had instigated a prosecution against him, and, with passions inflamed and excited by the drink he had taken, he assaulted him and beat him into unconsciousness without any provocation whatever. It is no doubt true that if he had been sober this deed would not have been done. While his passions were inflamed by drink, his subsequent conduct showed that defendant was not so drunk that he did not know what he was doing. The fact that a few minutes afterwards he told his wife what he had done, and made preparations to escape, and did elude the officers for several days, shows that he at once appreciated the gravity of the crime he had committed. But, if we concede that he was insane, it was not delirium tremens, but only his ordinary condition when drunk. He voluntarily drank the whiskey, and became drunk. The books are full of cases holding that such insanity, which is only another word for drunkenness is no excuse for crime. *Casat v. State,* 40 Ark. 511; *People v. Garbutt,* 17 Mich. 9, 97 Am. Dec. 162.''

Appellant was not found guilty of murder either in the first or second degree, but only of voluntary manslaughter, and no specific intent is required to commit that crime. We hold, therefore, upon the authority of the Byrd case, *supra,* and of later cases which approved it that no error was committed in refusing to submit the question of appellant's insanity to the jury. See, also, *High v. State,* 197 Ark. 681, 120 S. W. 2d 24; *Ballentine v. State,* 198 Ark. 1037, 132 S. W. 2d 384; *Alford v. State,* 110 Ark. 300, 161 S. W. 497; *Carty v. State,* 135 Ark. 169, 204 S. W. 207. See, also, § 2931, Pope's Digest.

Certain other exceptions were saved and argued, but we think no discussion of them is required, and as no error appears the judgment must be affirmed, and it is so ordered.