WILLIAMS *v*. STATE.

5135 396 S. W. 2d 834

Opinion delivered December 13, 1965.

[Rehearing denied January 24, 1966.]

*Thomas L. Cashion,* for appellant.

*Bruce Bennett,* Attorney General, By: *Clyde Calliotte,* Asst. Attorney General, for appellee.

SAM ROBINSON, Associate Justice. Appellant James Williams was convicted of the crime of murder committed in the perpetration of the crime of rape. The jury fixed the punishment at death by electrocution. On appeal appellant argues several points, all of which we have carefully examined. In addition, we have examined the entire record. There is no error.

The evidence shows that on the morning of September 24, 1964, Mrs. Maudene Deggs, 25 years of age, and the mother of three children, was abducted from her home. The next day her body was found about three and one-half miles south of her house, near a dim, seldom used logging road in the woods, about one-quarter of

a mile from the main highway. She had been raped and murdered. Although the evidence is circumstantial, it proves appellant guilty beyond any reasonable doubt. In most cases of this kind the State must rely on circumstantial evidence. Crimes of this nature are not ordinarily committed in the presence of witnesses other than the victim, and of course her lips are sealed by death. Circumstantial evidence is sufficient to sustain a conviction. *Osburne* v. *State,* 181 Ark. 661, 27 S. W. 2d 783, *Jefferson* v. *State,* 196 Ark. 897, 120 S. W. 2d 327; *Smith* v. *State,* 227 Ark. 332, 299 S. W. 2d 52; *Walker* v. *State,* 239 Ark. 685, 317 S. W. 2d 823.

The evidence, which is uncontradicted, shows that Mrs. Deggs lived with her husband and three children, about five miles south of Crossett, Arkansas. On the morning of September 24, 1964, she drove her two older children to the school bus stop. Later, about 11:30 that morning, Mrs. Emma Lee Miller, who lived about four and one-half miles from the Deggs' home, saw a little boy walking in the road in front of her home. Upon investigation she found that the child was Mrs. Deggs' four year old son. She took the child to the home of Mrs. W. S. Cooty, the child's grandmother. Mrs. Miller, along with Mrs. Cooty and the child, then drove to the Deggs' home. Neither Mrs. Deggs nor anyone else was there. A flat iron was on the ironing board, and it was still connected to the electricity. Garments which Mrs. Deggs was apparently in the process of ironing were there. The bedroom was somewhat disarranged, and one of Mrs. Deggs' shoes was on the floor. There was no trace of Mrs. Deggs.

The peace officers of the county and state were notified, and a general alarm of Mrs. Deggs' disappearance was broadcast. Many people gathered and began a wide-spread search for her. The next day her body was found about three and one-half miles southeast of her home, as heretofore indicated. Pictures were made of the body before it was disturbed and removed from the place where it was found. Upon examination of the body by medical authorities, it was found that death was

caused by a crushing of the skull by a heavy blow with a hard object. Male spermatazoa was found in the vagina.

In the investigation for clues, it developed that at about 8:15 or 8:30 a.m. on the morning Mrs. Deggs disappeared, Mrs. Ed Phillips was driving past the Deggs' home, and that she saw a black and white Buick automobile, 1956 model, coming out of the Deggs driveway. Mrs. Phillips expected the car to stop before entering the road, but it did not do so, but entered the road at a rather high rate of speed, turned south, and passed by Mrs. Phillips. A colored man was driving. Mr. Willie Claude Kelly and Mr. Bobby Stell, who were working on the telephone lines, also saw the black and white Buick on the road which passes by the Deggs' home.

The appellant, who worked nearby, owned a black and white Buick that fitted the description of the car seen coming from the Deggs' home on the day of the murder. An officer questioned him soon after obtaining that information. At that time, a small burn was noticed on the appellant's chest. Appellant stated that he was burned by the muffler of the chain saw he was operating in the woods, where he said he had worked on the day of the murder. About two weeks later, after obtaining additional information to the effect that appellant did not go to work at the time and place he claimed to have worked on the day of the murder, he was again questioned. The burned black skin on his chest had peeled off, and there on his chest was a scar made by a burn from an object the size and shape of the flat iron Mrs. Deggs was using when apparently she was first attacked in her home. Moreover, there was found at the scene of the rape and murder, a shoe which matched the one found in Mrs. Deggs' bedroom, and a wrench which the evidence indicates was the murder weapon. The wrench was identified as belonging to appellant. It was also later shown that it would not have been possible for the scar on appellant's chest to have been caused by a burn from a chain saw muffler.

It is hard to imagine any set of circumstances that would more surely point to guilt than that shown by the evidence in this case. The evidence of appellant's guilt is substantial, and is fully sufficient to sustain the verdict of guilty. In fact, it is hard to see how the jury could have arrived at any other verdict.

Appellant argues that the trial court erred in overruling his motion for a change of venue. The motion alleged that the people of Ashley County are so prejudiced against him that he could not get a fair and impartial trial in that county. This motion was supported only by the affidavits of Prewell G. Wilson and Bessie L. Taylor. There are no other supporting affidavits. Wilson and Taylor are not identified, and there is nothing to show that they are residents of Ashley County or that they were in a position to know how the people in the county felt. In support of the motion, appellant introduced evidence that a local newspaper had published some of the facts regarding the murder. But no witnesses, except the two who gave the aforementioned affidavits, stated that the defendant could not get a fair and impartial trial in the county. "The burden was on appellant to make credible proof to support his motion." *Maxwell v. State*, 236 Ark. 694, 370 S. W. 2d 113.

Next, appellant argues that pictures made of the body of the victim of the rape and murder, taken at the scene of the crime before the body was removed, were inadmissible. The appellant was charged with the crime of murder in the first degree, committed in the perpetration of rape. Under this charge, it was not necessary for the State to prove premeditation, deliberation and malice, as would have been necessary if those things had been elements of the offense charged. But to sustain the charge in the felony information, it was necessary to prove the rape. The pictures in question, taken before the body of the victim was disturbed, constituted strong evidence that the murder victim had been raped. There was no error in admitting the pictures in evidence. As stated in Wharton's Criminal Evidence, 12th Ed., Vol.

11, at page 654: "When otherwise admissible, it is no objection that a photograph is gruesome, or likely to inflame or prejudice the jury. A photograph otherwise admissible is therefore not to be excluded even though it shows . . . or the naked or decomposed body of the victim." This court has adopted this view previously in *Nicholas* v. *State*, 182 Ark. 309, 31 S. W. 2d 527; *Higdon* v. *State*, 213 Ark. 881, 213 S. W. 2d 621; *Bailey* v. *State*, 227 Ark. 889, 302 S. W. 2d 796.

The evidence tended to show that at the time the victim was first attacked in her home, she was standing at an ironing board ironing with a hot iron (when the officers first arrived at the house to investigate the disappearance of Mrs. Deggs, the electric iron was still connected and turned on). When the appellant was arrested some two weeks after the commission of the crime, he had a scar on his chest caused by a recent burn. The skin where burned had peeled off leaving a light colored scar, which was the same size and shape of the flat iron Mrs. Deggs was using. The iron fitted the scar exactly. The officers had pictures made of the scar from the burn on the appellant's chest; the pictures were admissible.

The admissibility of such evidence depends upon its classification as either "testimonial" or "non-testimonial." The distinction is clearly set out in McCormick's treatise on the law of evidence, (1954), Sec. 126: "As expounded by Wigmore and widely accepted in recent opinions, only these forms of coerced conduct constitute that 'testimonial compulsion' against which the privilege protects. No other compelled conduct or its products, however unlawful or inadmissible on other grounds, is within the protection of this privilege. In jurisdiction following this view, the accused without breach of this privilege may be fingerprinted and photographed, deprived of his papers and other objects in his possession, may be physically examined, may have his blood and other bodily fluids taken for tests without his consent, may be required to give a specimen of his handwriting, may be compelled to assume positions taken by

the perpetrator of the crime, and many be forced to participate in a police 'line up,' to stand up for identification, put on articles of clothing, or display a scar . . ."

The position that only testimonial evidence is protected as being within the scope of the privilege against self incrimination, guaranteed by the 5th Amendment to the Constitution of the United States, is substantiated by Wigmore on Evidence, Vol. 8, Sec. 2265:

"The limit of the privilege should be plain. From the general principle (§ 2263, *supra*) it results that an inspection of the bodily features by the tribunal or by witnesses does not violate the privilege because it does not call upon the accused as a witness—i.e., upon his testimonial responsibility. That he may in such cases be required sometimes to exercise muscular action as when he is required to take off his shoes or roll up his sleeve—is immaterial, unless all bodily action were synonymous with testimonial utterance; for, as already observed (§ 2263 *supra*), not compulsion alone is the component idea of the privilege, but testimonial compulsion. What is obtained from the accused by such action is not testimony about his body, but his body itself . . . When the person's body, its marks and traits, itself is in issue, there is ordinarily no other or better evidence available for the prosecutor."

In an opinion by Mr. Justice Holmes in the case of *Holt* v. *U. S.*, 218 U. S. 245, involving a similar question of admissibility, he said:

"Another objection is based upon an extravagant extension of the Fifth Amendment. A question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him.

not an exclusion of his body as evidence when it may be material.''

In the Nevada case of *State* v. *Ah Chuey,* 33 Am. Rep. 530, Judge Hawley said: ''Marks made by wounds upon the person of an offender given with a weapon in the hands of an assaulted party, corresponding with marks visible upon the person of the prisoner, have always been considered as a strong criminating circumstance tending to establish the identity and guilt of the accused person.'' This court has followed this position. *Mabry* v. *Kettering,* 89 Ark. 551, 117 S. W. 746.

Affirmed.