Laura BERRY *v.* STATE of Arkansas

CR 86-47                              718 S.W.2d 447

Supreme Court of Arkansas
Opinion delivered November 3, 1986
[Rehearing denied December 8, 1986.*]

---

*Hickman, Hays, and Newbern, JJ., would grant rehearing.

224

*Hubbard, Patton, Peek, Haltom & Roberts*, by: *Raymond W. Jordan*; and *Atchley, Russell, Waldrop & Hlavinka*, by: *J. Dennis Chambers and Clyde Lee*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. Laura Berry appeals from a conviction of capital felony murder in which she was sentenced to life imprisonment without parole. Among her points for reversal, the appellant contends that the trial court erred in admitting numerous graphic photographs of the victim taken at the scene and afterward, and entered to show the injuries inflicted by her accomplice in this crime. We agree and reverse for a new trial. The only other issue we deem necessary to address, in light of our holding, is the appellant's argument that the trial court erred in denying her motion for a change of venue because of pretrial publicity. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(b) because of the length of the sentence.

It was undisputed at trial that the death of Mrs. Nancy Sangalli, the appellant's great-aunt, was the result of a beating administered by the appellant's boyfriend Kelly Mills, with a crowbar, a cooking pot and his fists. Pursuant to an agreement with the prosecuting attorney, Mills pleaded guilty to capital murder in anticipation of a life sentence without parole in return for his testimony in the appellant's trial. Mills testified that he and the appellant planned for him to go to Mrs. Sangalli's home and, when the appellant later rang the doorbell, knock Mrs. Sangalli out with a crowbar he had hidden in his back pocket. They would then steal money, checks and an express banking card to finance their escape from the country. Mills stated that the appellant and he got the crowbar from the appellant's home.

According to Mills' account, he "chickened out" when the appellant first rang the doorbell, but later struck Mrs. Sangalli with the crowbar when she was turned away from him. Mills said that when Mrs. Sangalli attempted to escape, he pulled her to the floor and began hitting her. He was unable to relate the details of the attack, saying he blacked out, but remembered the appellant coming in as he was dragging Mrs. Sangalli away. The two then ransacked the home but found only a small amount of money and some checkbooks, which they took. They stole the victim's car and

drove to Dallas, but ran out of money and returned to Texarkana the next day. They were arrested upon their return. The appellant gave a statement to one of the arresting officers to the effect that she was not aware of Mills' intentions until she entered her aunt's house and that she then went along with Mills because he threatened to kill her if she did not. The appellant helped the police recover the crowbar they had thrown away on the return trip from Dallas, and it was admitted into evidence against her.

At trial, the prosecuting attorney introduced nine photographs of the victim (including six of the victim's face), most of which were in color, over the objections of the appellant. The photographs, graphically showing the extensive injuries to the victim's face and some taken to emphasize those injuries, were accepted by the trial court without exception. They included photographs of the trail of blood where the victim was dragged, of the victim's body in a pool of blood at the scene, closeup autopsy photographs of the victim's face, an autopsy photograph of the side of the victim's head with the hair shaved to further expose the injuries, and a closeup of the victim's shattered teeth which had been removed from her mouth by the medical examiner.

The appellant objected that the photographs were not relevant in that the brutality of the murder, the cause of death, and the perpetrator of the injuries were all admitted by the appellant and it was uncontradicted that the appellant never touched the victim. The appellant argued that any probative value of the photographs was outweighed by the prejudice likely to result, and that at some point the photographs were merely cumulative and entered only to further incite passion against her.

The first question upon the proper introduction of photographs, as with all evidence, is whether they are relevant. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." A.R.E. Rule 401. If the evidence is relevant, it still "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." A.R.E. Rule 403. The determination of

admissibility is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Hallman* v. *State*, 288 Ark. 448, 706 S.W.2d 381 (1986).

Decisions of this court have permitted broad admission of photographs of murder victims. The fact that photographs are inflammatory is not alone sufficient reason to exclude them. *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984); *Walton* v. *State*, 279 Ark. 193, 650 S.W.2d 231 (1983). Inflammatory pictures are "admissible in the discretion of the trial judge, if they tend to shed light on any issue or are useful to enable a witness to better describe the objects portrayed or the jury to better understand the testimony, or to corroborate testimony." *Perry* v. *State*, 255 Ark. 378, 500 S.W.2d 387 (1973).

We have often held that a photograph is not inadmissible merely because it is cumulative and that the defendant cannot admit the facts portrayed and thereby prevent the state from putting on its proof. *Rodgers* v. *State*, 261 Ark. 293, 547 S.W.2d 419 (1977); *Cotton* v. *State*, 276 Ark. 282, 634 S.W.2d 127 (1982). "Of course, if a photograph serves no valid purpose and can only result in inflaming the passions of the jury, it is inadmissible." *Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979).

Even the most gruesome photographs have been held admissible to show the nature and location of wounds in order to rebut a defendant's claim of self-defense, *Perry, supra*; to show premeditation and deliberation, *Robinson* v. *State*, 269 Ark. 90, 598 S.W.2d 421 (1980); to show the speed and force of impact of the defendant's car in a manslaughter case, *Prunty* v. *State*, 271 Ark. 77, 607 S.W.2d 374 (1980); to show the death was caused under circumstances manifesting an extreme indifference to the value of human life, *Gruzen, supra*; and to show that the victim had been raped, *Williams* v. *State*, 239 Ark. 1109, 396 S.W.2d 834 (1965).

Because of the trial court's carte blanche acceptance of these graphic and repetitive pictures into evidence, it is necessary that we reexamine our position on the admissibility of inflammatory photographs. The analysis should firmly emphasize the need for the trial court to carefully weigh the probative value of the photographs against their prejudicial nature, rather than

promoting a general rule of admissibility which essentially allows automatic acceptance of all the photographs of the victim and crime scene the prosecution can offer.

Other states have been equally liberal in the admission of similar photographs where they were relevant to proof of the state's case. Like we do now, many have found it necessary, however, to stem the resulting influx of inflammatory pictures where the claims of relevance were increasingly tenuous in light of the prejudicial nature of the photographs. *E.g., Cavazos* v. *State*, 365 S.W.2d 178 (Tex. Cr. App. 1963); *Borroum* v. *State*, 168 Tex. Cr. 552, 331 S.W.2d 314 (1960); *Davis* v. *State*, 165 Tex. Cr. 456, 308 S.W.2d 880 (1958); *People* v. *Landry*, 54 Ill. 3d 159, 368 N.E.2d 1334 (1977); *People* v. *Garlick*, 46 Ill. 3d 216, 360 N.E.2d 1121 (1977) and *People* v. *Leflar*, 38 Ill. 2d 216, 230 N.E.2d 827 (1967).

In *State* v. *Bucanis*, 26 N.J. 45, 138 A.2d 739 (1958) *cert. denied*, 357 U.S. 910 (1958), where graphic autopsy photographs showing the gunshot wounds of the victim were admitted in the trial of the deceased's husband, the New Jersey court described a similar tendency to abuse the discretion given the trial courts. After a review of New Jersey cases the court stated:

These cases contained broad pronouncements which, perhaps, gave too much encouragement to the thought that the prosecution could use at will any and all pictures at a murder trial as long as they possessed some relevancy. Each decision, however, presumed, of course, that the trial judge would continue to exercise a modicum of sound judicial discretion and exclude any picture that was unusually gruesome or repulsive and had little evidential value, admitting only those which would be of significant assistance to the jury in its deliberations as to the guilt or innocence of the defendant and which were not unduly prejudicial.

The fact that a photograph may have some probative force is not always completely determinative of its admissibility. There are cases where the logical relevance of such an exhibit will unquestionably be overwhelmed by its inherently prejudicial qualities which will impair the defendant's right to a fair and impartial trial. When

undoubtedly the minute peg of relevance will be entirely obscured by the quantity of dirty linen hung upon it, fair play directs the exclusion of the exhibits.

After holding that the trial court had abused its discretion in admitting the pictures, the New Jersey court nevertheless affirmed the conviction because the objection at trial was insufficient to preserve the point for appeal.

Similar problems presented by allowing the use of such photographs were discussed in *State v. Adams*, 76 Wash.2d 650, 458 P.2d 558 (1969), (Rosellini, J. dissenting) *rev'd in part*, 403 U.S. 947 (1971):

> The majority seems to feel that, because we have never found that the introduction of photographs constituted prejudicial error, we are committed to the philosophy that the trial court's exercise of discretion on such matters is not subject to review. The trouble is, I fear, that every time we refuse to reverse in a doubtful case, the impression is created that the prosecutor is free to go a little further next time. I also fear that, if this trend is allowed to continue, pictorial appeals to the emotions of the jury may become an accepted substitute for proof that the defendant committed the crime.

The Washington court's increased concern over the widening acceptance of inflammatory pictures was expressed again in *State v. Crenshaw*, 98 Wash. 2d 789, 659 P.2d 488 (1983):

> Prosecutors as well as trial courts must exercise their discretion in the use of gruesome photographs. The statement that "the State had the right to prove its case up to the hilt in whatever manner it chose," must be read to mean only that the State may present ample evidence to prove every element of the crime. . . . Prosecutors are not given a carte blanche to introduce every piece of admissible evidence if the cumulative effect of such evidence is inflammatory and unnecessary. In other words, in such situations where proof of the criminal act may be amply proven through testimony and noninflammatory evidence, we caution prosecutors to use restraint in their reliance on gruesome and repetitive photographs.

Finally, after issuing these warnings, the Washington court found reversible error where the state introduced four autopsy photographs of the victim's head to show the force of the blows administered by the defendant along with other autopsy photographs and a photograph of the victim's body on the waterbed where it was found. *State* v. *Sargent*, 40 Wash. App. 340, 698 P.2d 598 (1985). In that situation, the Washington court found the prejudicial effect outweighed any probative value the photographs could have.

In *State* v. *Banks*, 564 S.W.2d 947 (Tenn. 1978), the Tennessee Supreme Court discussed the factors to be considered by the trial judge when inherently prejudicial photographs are offered:

> The matters to be taken into consideration include the value of photographs as evidence, that is, their accuracy and clarity, and whether they were taken before the corpse was moved, if the position and location of the body when found is material; the inadequacy of testimonial evidence in relating the facts to the jury; and the need for the evidence to establish a *prima facie* case of guilt or to rebut the defendant's contentions. . . .

> The more gruesome the photographs, the more difficult it is to establish that their probative value and relevance outweigh their prejudicial effect. *Commonwealth* v. *Scaramuzzino*, 455 Pa. 378, 317 A.2d 225 (1974). In the presence of an offer to stipulate the facts shown in the photograph, the State's burden of justification is often difficult to sustain. *People* v. *Chavez*, 50 Cal.2d 778, 329 P.2d 907 (1958); *Poe* v. *Commonwealth*, Ky. App., 301 S.W.2d 900 (1957). Failure of the defense to dispute the testimony that the photographs illustrate may have the same effect. *People* v. *Falkner*, 389 Mich. 682, 209 N.W.2d 193 (1973); *State* v. *Bucanis*, 26 N.J. 45, 138 A.2d 739 (1958).

> In some cases, photographic evidence has been excluded because it does not add anything to the testimonial descriptions of the injuries. *Archina* v. *People*, 135 Colo. 8, 307 P.2d 1083 (en banc, 1957); *Dyken* v. *State*, Fla., 89 So.2d 866 (en banc, 1956); *State* v. *Morgan*, 211 La. 572,

30 So.2d 434 (1947). Those made during or after an autopsy are most often condemned, *Kiefer* v. *State*, 239 Ind. 103, 153 N.E.2d 899 (1958); *State* v. *Bucanis, supra*, because they present an even more horrifying sight and show the body in an altered condition and because lay jurors normally do not have the experience necessary to draw correct inferences from the appearance of internal organs. *State* v. *Morris*, 245 La. 175, 157 So.2d 728 (1963).

In *Banks*, photographs of the deceased's battered head and body were admitted in the murder trial of the defendant, who had beaten him to death with a club. The Tennessee Court of Appeals had reversed, but the Tennessee Supreme Court held that, while there was error, it was not reversible because the record did not affirmatively show that it affected the results of the trial.

Where the state was permitted to introduce fourteen autopsy pictures of the deceased, the Kansas Supreme Court in *State* v. *Boyd*, 216 Kan. 373, 532 P.2d 1064 (1975), reversed the trial court and said:

> This court has gone a long way, perhaps too far, in countenancing the introduction of grisly, gruesome photographs. . . . Some of the photographs which were admitted could have been helpful to the jury by showing the angle of penetration of the murder instrument into the deceased's body. We fail to see the necessity, however, of the state's offering repetitive exhibits to prove the same point.

A sampling of other cases finding error in the admission of photographs of the deceased includes *State* v. *Morris*, 245 La. 475, 157 So.2d 728 (1963) (photographs of the deceased during autopsy had no real evidentiary value and were so shocking and emotionally disturbing as to be inherently prejudicial); *People* v. *Falkner*, 389 Mich. 682, 209 N.W.2d 193 (1973) (where appellant relied on alibi defense and there was unrebutted proof of the injuries, photographs of shotgun wound were entered for no other reason than to excite passion and prejudice); *State* v. *Middleton*, 339 S.E.2d 692 (S.C. 1986) (any probative value of autopsy photographs was negated by other adequate proof and outweighed by the prejudice they created); *State* v. *Foust*, 258

N.C. 453, 128 S.E.2d 889 (1963) (ten gory color photographs of dead body were excessive); *Sipsas* v. *State*, 716 P.2d 231 (Nev. 1986) (prejudicial effect of color autopsy photograph of eviscerated child victim exceeded its probative value); *Young* v. *State*, 234 So. 2d 341 (Fla. 1970) (admission of photographs of partially decomposed torso was prejudicial error); *State* v. *Floyd*, 360 S.W.2d 630 (Mo. 1962) (photograph of decomposed body was needlessly inflammatory); *Jordan* v. *Commonwealth*, 371 S.W.2d 632 (Ky. 1963) (photographs of mangled body of victim of car collision in involuntary manslaughter case were improperly admitted where force of collision was established by other evidence, but error not preserved for appeal); and *State* v. *Connor*, 434 A.2d 509 (Me. 1981) (admission of photograph showing bullet wound and distorted face of victim was error, but was harmless in light of overwhelming evidence against defendant).

Some states, in recognition of the potential for prejudice caused by inflammatory photographs, have adopted a rule that the photographs are not admissible unless they are "of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." *Commonwealth* v. *Liddick*, 370 A.2d 729 (Pa. 1977). *See also* *McCullough* v. *State*, 255 Ga. 672, 341 S.E.2d 706 (1986) (postautopsy photographs must be "necessary" to establish a material fact that could only become apparent because of the autopsy.)

■■ In the present case, an element of the state's proof was that the death was caused "under circumstances manifesting extreme indifference to the value of human life." It is not true, as appellant argues, that the fact that she did not administer the blows makes the photographs totally irrelevant, because she is liable for the conduct of her accomplice. Ark. Stat. Ann. § 41-302 (Repl. 1977). Neither does the fact that she admitted to everything shown in the photographs necessarily remove all probative value, since we have held that this alone does not preclude admission. Nevertheless, when the state and the defendant agree not only on the cause of death and the brutal manner in which it was carried out, but also on who inflicted the injuries and his "extreme indifference" in doing so, that has a bearing on the probative value of the photographs.

■ The photographs did not illuminate any issue which the state had not already conclusively proved and the appellant admitted. They did nothing to rebut a defense by the appellant or to clarify the cause of death. They were not necessary to corroborate any questionable testimony. The basic issue at trial was whether the appellant helped plan the crime. In short, the probative value of the photographs in this case was limited to the cause and nature of death and would easily have been satisfied by introduction of a reasonable number of photographs depicting the injury to the victim and showing the crime scene.

■ Here, the introduction into evidence of six, mostly repetitious, gory, color photographs of the victim's face, and portions thereof, taken both at the crime scene and at the medical examiner's office, was excessive and their prejudicial nature was obvious. Multiple photographs of the victim, in this instance, were of little probative value and could do nothing but inflame the jury and distract from the issues raised by the appellant.

■ A good definition of "unfair prejudice" is found in the advisory committee's commentary to Fed. R. Evid. 403, which describes it as an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." This is precisely the type of prejudice the rule is meant to prevent, and in this case the prejudice substantially outweighed the probative value of the photographs. Accordingly, the trial judge erred in admitting the photographs.

The other argument we consider necessary to address concerns the denial of a motion for change of venue. The appellant made a motion before trial for a change of venue under Ark. Stat. Ann. § 43-1501 (Repl. 1977), alleging that "the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had therein." In support of her motion, the appellant submitted nine newspaper stories which appeared over a period of seven months and which covered the story from the arrests of Mills and the appellant to the pretrial hearings before the appellant's trial. In addition, two witnesses signed affidavits and later testified that the appellant could not receive a fair trial in Miller County because of the pretrial publicity the murder had received. The appellant therefore met the formal requirements of

Ark. Stat. Ann. § 43-1502 (Repl. 1977), which provides:

Application for order of removal. The application of the defendant for such order of removal shall be by petition setting forth the facts on account of which the removal is requested; and the truth of the allegations in such petition shall be supported by the affidavits of two [2] credible persons who are qualified electors, actual residents of the county and not related to the defendant in any way. Reasonable notice of application shall be given to the attorney for the State [prosecuting attorney]. The court shall hear the application and, after considering the facts set forth in the petition and the affidavits accompanying it and any other affidavits or counter affidavits that may be filed and after hearing any witnesses produced by either party, shall either grant or refuse the petition according to the truth of the facts alleged in it and established by the evidence.

The state produced no counter affidavits or testimony from witnesses stating that the appellant could receive a fair trial in Miller County.

■ "A change of venue should be granted only when it is clearly shown that a fair trial is likely not to be had in the county." *Kirkendall v. State*, 265 Ark. 853, 581 S.W.2d 341 (1979). The burden of proof is on the defendant in a motion to change the venue and the decision of the trial court will be upheld unless it is shown there was an abuse of discretion in denying the motion. *Id.*

This court examined § 43-1502 in *Robertson v. State*, 212 Ark. 301, 206 S.W.2d 748 (1947) and stated that the trial court "heard the testimony of other witnesses besides that of the supporting affidavits and announced the conclusion that the appellant could obtain a fair trial in that jurisdiction. We may therefore review only the exercise of the judicial discretion vested in the court and in view of the conflict in the testimony, we are unable to say that any abuse of this discretion was shown."

In *Rush v. State*, 238 Ark. 149, 379 S.W.2d 29 (1964), we held that the trial court had abused its discretion in not granting the change of venue based upon twelve affidavits when the state offered no counter affidavits or conflicting testimony to contest

the truth of the facts alleged in the affidavits or established by the testimony. In this case, we are not concerned with the state's failure to provide counter affidavits or conflicting testimony since the trial court's findings focus on the fact that the affiants are not "credible persons" as prescribed by Ark. Stat. Ann. § 43-1502 in that their affidavits and testimony did not meet the burden of proof required to mandate a change of venue.

Although the state produced no witnesses of its own by affidavit or personal appearance, it was able to show by cross examination to the satisfaction of the trial court that the affiants for the appellant were not credible because they did not possess knowledge of the state of mind of the inhabitants of the entire county. The trial court, in denying the motion, stated "that the two ladies, acting in good faith, attempted to give their opinion. But I think it was demonstrated that they do not have broad knowledge of the geographical section, or the thinking of the geographical section of this county. . . . I don't believe that they demonstrated from a broad section of the county that you could not get a fair and impartial trial."

We have held on numerous occasions that a motion for change of venue is not supported by "credible persons" when the movants, affiants or witnesses are unable to show in their testimony that they have a general knowledge as to the state of mind of the inhabitants of the whole county or that they are cognizant of prejudice existing throughout the whole county. *Brown* v. *State*, 134 Ark. 597, 203 S.W. 1031 (1918); *Davis* v. *State*, 155 Ark. 247, 244 S.W. 750 (1922); *Bailey* v. *State*, 204 Ark. 376, 163 S.W.2d 141 (1942); *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982). Likewise we stated in *Foster* v. *State*, 275 Ark. 427, 631 S.W.2d 7 (1982) that a movant in a change of venue proceeding must demonstrate that there is a countywide prejudice against him before his motion for change of venue will be granted. These rules of law are still in force and effect.

We have also held that there can be no error in the denial of a change of venue if an examination of the jury selection shows that an impartial jury was selected and that each juror stated he or she could give the defendant a fair trial and follow the instructions of the court. *Perry* v. *State*, 277 Ark. 357, 642 S.W.2d 865 (1982). The newspaper coverage of the events

surrounding this trial was not unusual for a murder case, and, while the majority of the prospective jurors stated during voir dire that they had read or heard some reports concerning the case, only four prospective jurors were excused because they said they had formed a definite opinion as to the appellant's guilt. All the jurors selected either had heard nothing regarding the case or said they could set aside anything they had heard and decide the case on the evidence. It is not necessary that the jurors be totally ignorant of the facts surrounding the case, as long as they can set aside any impression they have formed and render a verdict solely on the evidence at trial. *Swindler* v. *State*, 267 Ark. 418, 592 S.W.2d 91 (1979).

For these reasons, venue was properly maintained in Miller County.

Reversed and remanded.

HICKMAN and NEWBERN, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. In reviewing records of brutal and senseless murders, we have numerous times seen photographs as gruesome as these. The state had a right to prove its case and to recreate for the jury the last few desperate and horror-filled moments of a defenseless old lady being brutally bludgeoned to death by Berry's boyfriend. Furthermore, the evidence is viewed in the light most favorable to the state, not most favorable to the defendant as the majority has done. *Dix* v. *State*, 290 Ark. 28, 715 S.W.2d 879 (1986). The record reflects that Berry chose the victim, conspired in the killing and was present at the murder scene at the time of the murder. We do not know if she used the crow bar. She may have helped. We do know that she could have stepped into stop the blows which were repeatedly struck to kill her great aunt. The boyfriend said the first blow did not knock her out so he kept hitting her until he (Mills) blacked out. No doubt his blackout was a psychological block to save his mind from reliving his dark deed. But relive it he should, and relive it Berry should.

Berry did not want to see nor the jury to see what she had wrought. The photographs demonstrate the brutal repeated use of the weapon—a crow bar. The assailant, or assailants, would not stop beating the woman; repeatedly she was struck about the

face and head until she was dead. These photographs demonstrate the brutality, the severity, and the facts of the murder. She was not killed by one blow, but many. The jury was entitled to witness the murder as evidenced by the photographs.

Defendants do not want juries to see the crime scene. Defendants—and it is their right to try—want to keep as much grisly evidence from the jury as possible so that they can disassociate themselves from those black moments when their inhumanity surfaced and deliberately caused the death of another person. A sterile courtroom scene, removed as far as possible from the facts of the killing is what they seek. However, the state has a right to try its case and to recreate the crime as it was committed when there were not witnesses. Victims have a right for a jury to see what was done to them just as society has that right.

We have viewed photographs of the bruised and battered bodies of small infants. *Burnett* v. *State*, 287 Ark. 158, 697 S.W.2d 95 (1985); *Williams* v. *State*, 267 Ark. 527, 593 S.W.2d 8 (1979). We have viewed photographs of victims with their heads bashed in or beaten to a pulp. *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984); *Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979). Those in this case were no worse than some in other cases. It is not a pleasant task to review such evidence, but murder is not a pretty business. The majority simply concludes there was an "excessive" number of photographs. All six photographs were different and needed for the state to present its case to the jury. The majority has simply substituted its judgment for that of the trial court. More importantly no guideline is set down for future cases. We will be asked in every case to find too many photographs were introduced. Because of the vagueness of the majority opinion we will do two things: tie the state's hands and create for ourselves more problems than we solve. Berry was convicted because of the overwhelming evidence of her guilt, not because of some photographs.

NEWBERN, J., joins in this dissent.