Cite as 2020 Ark. 295

# SUPREME COURT OF ARKANSAS

No. CR-19-870

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 1, 2020 |
| HAROLD BENNETT | APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BCR-18-239] |
| V. | | |
| | | HONORABLE CINDY THYER, JUDGE |
| STATE OF ARKANSAS | APPELLEE | <u>AFFIRMED</u>. |

**JOHN DAN KEMP, Chief Justice**

Appellant Harold Bennett appeals an order of the Mississippi County Circuit Court convicting him of first-degree murder and sentencing him to life imprisonment and a fifteen-year sentencing enhancement. For reversal, Bennett argues that the circuit court (1) erred in refusing to suppress testimony about a custodial statement that was not properly recorded, and (2) abused its discretion in admitting photographs that Bennett claimed were more prejudicial than probative. We affirm.

I. *Facts*

On June 20, 2018, a utility worker called 911 after discovering the body of Bianca Rainer in some brush in front of a house in Blytheville. Detectives noted that there were flies and maggots on her body and that the decomposition stage had begun. They observed that Rainer appeared to have suffered extensive injuries to her head and that a blanket was wrapped around her, a cord was around her neck, and several puzzle pieces were stuck to

her body. The forensic pathologist determined that Rainer had been shot in the head three times and had at least nineteen lacerations to her face and scalp.

During the police investigation, detectives interviewed Bennett in his residence across the street from where Rainer's body had been found and at the police station. In the interviews, Bennett at first denied killing Rainer but eventually admitted that he had beaten her to death with a metal bar. Bennett claimed that Rainer had attempted multiple times to attack him with a knife and that he was defending himself when he hit her with the bar.

In Bennett's residence, detectives found puzzle pieces scattered on the floor and blood splatters in various rooms. There was a bleach bottle in the hallway with a toothbrush. Bennett assisted the detectives in locating the metal bar and a .32-caliber revolver, which was hidden under the sink. A firearms examiner identified the bullets recovered from Rainer's body as having been fired from that revolver.

On July 10, 2018, Bennett was charged with first-degree murder, possession of a firearm by certain persons, and obstruction of governmental operations. A jury found Bennett guilty of first-degree murder.[1] He was sentenced as a habitual offender to life imprisonment plus a fifteen-year sentencing enhancement for using a firearm in the commission of the murder.

---

[1]The other two offenses were nolle prossed.

II. *Points on Appeal*

A. Arkansas Rule of Criminal Procedure 4.7

For his first point, Bennett argues that Detective Jason Simpkins's testimony about one of Bennett's interviews violated Arkansas Rule of Criminal Procedure 4.7 (2019) because the interview was not properly recorded. He contends that the circuit court erred in refusing to suppress Simpkins's trial testimony about the interview on this basis.

The facts relevant to the issue are as follows. Bennett gave multiple statements to detectives. The statement at issue on appeal was given to Detective Simpkins at the Blytheville Police Department on June 21, 2018. Simpkins explained that he recorded that interview, but there were some issues with the microphone attachment. Simpkins could be heard on the recording, but many of Bennett's responses were inaudible. Simpkins did not know that there were any problems with the microphone at the time of the interview and learned about the problems only when he went back and listened to the interview.

Simpkins testified that during the interview, Bennett admitted that Rainer had been at his residence and that he had paid Rainer to perform sexual acts on him. When Bennett was unable to follow through with those acts, he asked her for a portion of his money back. Bennett claimed that Rainer refused his request and attacked him with a knife. He then struck her numerous times in the head with a metal bar. He explained that he beat her into unconsciousness. Each time she regained consciousness, she would try to attack him again, and then he would start beating her again with the metal bar. After Bennett realized that

Rainer had died, he brought a trashcan inside, rolled Rainer's body up in a blanket, put her inside that trashcan, and discarded her body across the street.

After hearing the recording of the interview at issue, Simpkins's testimony about the interview, and arguments of counsel, the circuit court denied Bennett's motion to suppress the recording or Detective Simpkins's testimony. In so ruling, the circuit court recognized that Rule 4.7 does not mandate the recording of a custodial statement. It noted that in this case, a recording had been made and preserved, although it was of limited evidentiary value because of the poor audio quality. It further found that

> there was no bad faith on the part of the police.
>
> I'm certain that if there was an opportunity for them to have captured the entire exchange on video and audio, they would have. He explained the reason that the audio wasn't captured and I found his testimony to be credible in that regard.

We turn to the applicable law. When this court reviews a circuit court's ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances. *E.g., Anderson v. State*, 2011 Ark. 461, at 12, 385 S.W.3d 214, 222. We will reverse the circuit court's ruling only if it is clearly against the preponderance of the evidence. *Id.*, 385 S.W.3d at 222. The circuit court determines the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding a defendant's custodial statements, and this court defers to the circuit court in matters of credibility. *Id.*, 385 S.W.3d at 222.

Rule 4.7 states, in pertinent part:

(a) Whenever practical, a custodial interrogation at a jail, police station, or other similar place, should be electronically recorded.

(b)(1) In determining the admissibility of any custodial statement, the court may consider, together with all other relevant evidence and consistent with existing law, whether an electronic recording was made; if not, why not; and whether any recording is substantially accurate and not intentionally altered.

(2) The lack of a recording shall not be considered in determining the admissibility of a custodial statement in the following circumstances:

. . .

(B) a statement made during a custodial interrogation that was not recorded because electronic recording was not practical, . . . .

Ark. R. Crim. P. 4.7(a)–(b)(1), (b)(2)(B). Additionally, this court has declined to recognize a constitutional right to the recordation of a custodial statement. *See Clark v. State*, 374 Ark. 292, 302–04, 287 S.W.3d 567, 574–76 (2008).

We agree with the circuit court that there was no violation of Rule 4.7 for the following reasons.[2] First, we have previously stated that Rule 4.7 does not require exclusion of an unrecorded statement. *Tarver v. State*, 2018 Ark. 202, at 4, 547 S.W.3d 689, 693. Second, as the circuit court stated, the statement at issue was recorded despite the microphone's malfunction. The circuit court found no bad faith on the part of police as to the malfunction and found Simpkins's explanation of the malfunction to be credible—a

---

[2]At trial, the State presented Detective Simpkins's testimony about the interview instead of the actual recording of the interview. The State also introduced into evidence two subsequent interviews during which Bennett admitted having beaten Rainer to death with a metal bar.

5

matter on which we must defer to the circuit court. *Anderson*, 2011 Ark. 461, at 12, 385 S.W.3d at 222. Third, the content of the interview, as explained through Detective Simpkins's testimony, was consistent with Bennett's two later statements, which were entered into evidence at trial. Thus, we hold that the circuit court's denial of Bennett's motion to suppress Detective Simpkins's testimony about the interview that failed to properly record was not clearly against the preponderance of the evidence. We affirm the circuit court's ruling.

B. Photographs

Bennett next argues that the circuit court abused its discretion by admitting sixteen photographs over his objections. He moved to exclude the photographs under Arkansas Rule of Evidence 403 (2019), alleging that they were more prejudicial than probative. Specifically, State's trial exhibits 5, 6, 7, 8, 9, 10, 11, and 12 were crime-scene photographs of the victim. In moving to exclude these photographs, his trial counsel described them as grotesque, grisly, and capable of being described through testimony without being shown to the jury. He made similar assertions about State's trial exhibits 78, 79, 80, 81, 82, 83, 84, and 85—autopsy photographs introduced during the forensic pathologist's testimony.

The circuit court separately ruled on the admissibility of each photograph, giving specific reasons for its admission or exclusion. It admitted all eight of the State's proposed crime-scene photographs of the victim's body, finding that they helped explain and

corroborate the investigating officer's testimony, the nature and extent of the victim's injuries, and the puzzle pieces found on the victim's body. The circuit court excluded several autopsy photographs. On the eight autopsy photographs that it admitted, it found that they supported the forensic pathologist's testimony, helped explain the autopsy process, and illustrated the victim's injuries and her manner of death.

Bennett challenges the admission of the photographs under Arkansas Rule of Evidence 403, which states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We have held that the admission of photographs is a matter left to the sound discretion of the circuit court, and we will not reverse absent an abuse of that discretion. *Evans v. State*, 2015 Ark. 240, at 4, 464 S.W.3d 916, 918.

When photographs are helpful to explain testimony, they are ordinarily admissible. *Evans*, 2015 Ark. 240, at 4, 464 S.W.3d at 918. The mere fact that a photograph is inflammatory or cumulative is not, standing alone, sufficient reason to exclude it. *Id.*, 464 S.W.3d at 918. Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: (1) by shedding light on some issue; (2) by proving a necessary element of the case; (3) by enabling a witness to testify more effectively; (4) by corroborating testimony; or (5) by enabling jurors to better understand the testimony. *Id.*, 464 S.W.3d at 919. Other acceptable purposes include showing the condition of the victim's body, the probable type or location of the injuries, and the position in which the

7

body was discovered. *Id.*, 464 S.W.3d at 919. If a photograph serves no valid purpose and can only result in inflaming the passions of the jury, it is inadmissible. *Marcyniuk v. State*, 2010 Ark. 257, at 13, 373 S.W.3d 243, 252.

In *Berry v. State*, 290 Ark. 223, 227, 718 S.W.2d 447, 450 (1986), on which Bennett relies, we rejected a "carte blanche acceptance" by the circuit court of graphic and repetitive pictures. We stated that "[t]he analysis should firmly emphasize the need for the trial court to carefully weigh the probative value of the photographs against their prejudicial nature, rather than promoting a general rule of admissibility which essentially allows automatic acceptance of all the photographs of the victim and crime scene the prosecution can offer." *Id.* at 227–28, 718 S.W.2d at 450. Subsequently, in *Marcyniuk*, 2010 Ark. 257, at 14–15, 373 S.W.3d at 253, we affirmed the admission of seventeen crime-scene and autopsy photographs of the victim's body. There, the circuit court "carefully examined each photograph offered for admission[,] weighed the appropriate balancing test[,] exercised considerable discretion and restraint in deciding what photographs to admit[, and] individually pointed out its basis for allowing in each photograph[.]" *Id.*, 373 S.W.3d at 253.

Here, the facts are distinguishable from those in *Berry* because, in *Berry*, we rejected the circuit court's carte blanche acceptance of graphic and repetitive photographs. Instead, as in *Marcyniuk*, the circuit court here ruled separately on the admissibility of each photograph, giving its basis for the photograph's admission, and it excluded several

photographs in the process. Thus, we hold that the circuit court did not abuse its discretion admitting these sixteen crime-scene and autopsy photographs, and we affirm.

III. *Rule 4-3(i)*

Because Bennett received a sentence of life imprisonment, this court, in compliance with Arkansas Supreme Court Rule 4-3(i), has examined the record for all objections, motions, and requests made by either party that were decided adversely to Bennett. No prejudicial error has been found.

Affirmed.

*John H. Bradley*, Chief Public Defender; and *Rodney Chedister*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.