Anthony Tyrone MATTHEWS *v.* STATE of Arkansas

CR 01-1135                                    99 S.W.3d 403

Supreme Court of Arkansas
Opinion delivered March 6, 2003

*C. Scott Nance*, for appellant.

*J. Leon Johnson*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. Appellant, Anthony Tyrone Matthews, brings this appeal from his conviction of first-degree murder and life sentence imposed in connection with the shooting death of Alfredo Resendiz, which occurred on October 27, 2000, in Newport, Arkansas. Appellant asserts the following three points on appeal:

1) The trial court erred when it denied the appellant's motion in limine to exclude overly prejudicial photographs of the crime scene;

2) The trial court erred when it denied the appellant's objection to overly prejudicial evidence being admitted into evidence;

3) The trial court erred when it allowed the use of an uncertified interpreter at the trial.

Finding no error, we affirm.

## I. Photographs

For his first point on appeal, appellant asserts that the trial court abused its discretion in admitting certain photographs of the victim that he alleges were more prejudicial than probative. In *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001), this Court discussed the admission of photographs.

> The admission of photographs is a matter left to the sound discretion of the trial court. *Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999). When photographs are helpful to explain testimony, they are ordinarily admissible. *Id.* (citing *Williams v. State*, 322 Ark. 38, 907 S.W.2d 120 (1995)). Further, the mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. *Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994). Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. *Id.* Other acceptable purposes are to show the condition of the victims' bodies, the probable type or location of the injuries, and the position in which the bodies were discovered. *Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000). Absent an abuse of discretion, this court will not reverse a trial court for admitting photographs into evidence. *Id.*

*Barnes*, 346 Ark. at 104, 55 S.W.3d at 281.

In the instant case, the State was allowed to introduce photographs that depicted the deceased victim in various manners or views. These photographs were the subject of a pretrial hearing on the appellant's motion in limine seeking their exclusion. At the hearing, defense counsel raised various objections to photographs he anticipated would be proffered by the State. The State proffered eleven photographs. State's Exhibit No. 1 (admitted at trial as State's Exhibit No. 16), was an overhead view of the crime

scene to which defense counsel offered no objection. State's Exhibits Nos. 2-6 were various views of the victim, and State's Exhibits Nos. 7-11 were photographs taken during the autopsy of the victim, Alfredo Resendiz. The trial court examined each of the photographs and heard arguments of counsel. The trial court subsequently excluded State's Exhibits Nos. 3, 9, and 11, finding that these photographs were duplicative of remaining photographs.

At trial, the State sought to prove that the appellant shot and killed the victim during the course or in furtherance of a robbery. To that end, the State called witnesses familiar with the scene of the crime and the discovery of the victim as well as the medical findings of the autopsy. The State called James Duvall, a lieutenant with the Newport Police Department, who testified that he was the supervising officer of the investigation surrounding the death of the victim.

Duvall testified that, on the night of the shooting, he arrived at the scene at approximately 9:30 p.m. and, as part of his duties, photographed the crime scene with the body of the victim present and, subsequently, took additional photographs after the victim's body had been moved to the funeral home to await transport to the Arkansas State Crime Lab for an autopsy. Duvall described State's Exhibit No. 12 as a photograph of the victim as he lay in the street, where the shooting occurred. Duvall further described State's Exhibits Nos. 13, 14, and 15 as photographs depicting wounds to the victim's head and the bagged hands of the victim.

Duvall explained that, in the course of the investigation, the appellant had indicated that he had struggled with the victim and that his gun had accidentally discharged. According to Duvall, the victim's hands were bagged in order to preserve evidence that might have indicated signs of a struggle. Duvall also testified that when he interviewed the appellant, he had incorrectly assumed that the smaller bullet wound to the victim's forehead had been the entry wound and that the large wound to the back of the victim's head had been the exit wound. Duvall said that, during the course of several interviews, the appellant first denied involvement, then accused another person of the shooting, and, finally,

admitted participation, but maintained that his gun accidentally discharged during his struggle with the victim.

Dr. Stephen Erickson, qualified as an expert in the area of forensic pathology to give his opinion as to the cause and manner of death of the victim, testified that he performed an autopsy on the body of the victim, whom he identified as Alfredo Resendiz, a twenty-two-year-old Hispanic male. He testified that, prior to his external examination of the victim, he learned that the victim had been involved in a shooting. Consequently, his external examination of the body took this into account and was part of his testimony. Erickson said he noted a small abrasion on the back of the victim's right elbow and a small abrasion and contusion on the mid-forehead, from which he concluded that the victim had fallen to the ground after having been rendered unconscious by the gunshot wound to the head.

Erickson further testified that his examination revealed a through-and-through gunshot from the back of the head, in the hairline, with an exit wound located at the left forehead. In order to further examine and document his findings, Erickson said that the area around the wound was shaved and photographed. Erickson described State's Exhibit No. 19 as a photograph of the face and forehead of the victim that included an area that had been shaved to reveal the exit wound with a ruler placed in the photo to indicate the correct scale of the depiction. Erickson identified State's Exhibit No. 20 as a photo of the bullet entry-wound to the victim after having been cleaned and shaved to reveal the physical characteristics of the wound. State's Exhibit No. 21 was identified by Erickson as a photo of the victim's upper back and head with the bullet wound to the back of his head as he initially observed it.

Erickson said that after his examination of the physical characteristics of the head wound (depicted in the photos), he proceeded to determine the distance between the victim and the weapon when the weapon was fired. Erickson explained that firearm distance is classified in three categories: contact; close range, where powder from the firearm comes out and marks the skin; or distant, where the powder has lost its energy and does not reach to the skin of the target. With regard to the victim's wound, he

stated that it was consistent with that of a contact wound, in that the muzzle appeared to have created a seal against the skin and that, together with the projectile, gases associated with the firearm's discharge go underneath the scalp and deposit soot into the adjoining tissue.

Appellant principally relies on the case of *Berry v. State*, 290 Ark. 223, 718 S.W.2d 447 (1996), for the proposition that the introduction of photographs depicting the victim and his wounds was more unfairly prejudicial than probative. Appellant's reliance on *Berry* is misplaced. In *Berry*, there was clearly more of a "carte blanche acceptance" of graphic and repetitive pictures of the victim and the crime scene. *Id*. at 227, 718 S.W.2d at 450. This Court observed, in *Berry*, that the only real issue at trial was whether the defendant had helped plan the crime. We further described the use of photographs, which clearly distinguishes the instant case, as follows:

> [T]he probative value of the photographs in this case was limited to the cause and nature of death and would easily have been satisfied by introduction of a reasonable number of photographs depicting the injury to the victim and showing the crime scene.

*Id*. at 233, 718 S.W.2d 453.

In the instant case, the trial court exercised its discretion in excluding three of the ten photographs objected to as being cumulative or repetitive. Even if the remaining photos could be characterized as "inflammatory," they are admissible at the discretion of the trial judge if they tend to shed light on any issue or are useful to enable a witness to better describe the objects portrayed or the jury to better understand the testimony, or to corroborate testimony. *Perry v. Smith*, 255 Ark. 378, 500 S.W.2d 387 (1973). The testimony at trial revealed that, initially, the police believed (incorrectly, as it turned out) that the bullet that had killed the victim had struck him from front to back. Additionally, the police had taken various statements from the appellant, who had given varying accounts of the shooting and his participation therein. The seven remaining photos depicted what the police initially observed, the steps they took in their investiga-

tion, and what, ultimately, the medical examiner determined had happened.

In short, the photos of the victim's wounds clearly served to corroborate the testimony of Dr. Erickson and served to explain the course of the police's investigation. Based upon these accepted purposes for the photographs, the trial court was within its discretion in admitting them. We, therefore, affirm the trial court's admission of the photographs in question.

## II. Testimony Regarding Location of Appellant's Arrest

The appellant's next point on appeal is that the trial court abused its discretion in allowing testimony that he was arrested on the night of the shooting at a Newport liquor store with another suspect and in possession of several bottles of wine. The State contends that the testimony was offered, and is properly admissible as such, to demonstrate the appellant's state of mind, *i.e.*, his motive or intent. The State further points out that, although appellant did object to the testimony in this regard, he failed to request a limiting instruction with regard to the jury's consideration of this evidence and, as such, the trial court should be affirmed. We agree.

The appellant was initially charged with capital murder, in that he, or an accomplice, caused the death of the victim during the commission of a robbery. Ark. Code Ann. § 5-10-101 (Repl. 1997). The underlying felony of robbery requires that the actor must act "with the purpose of committing a felony or misdemeanor theft[.]" Ark. Code Ann. § 5-12-102(a) (Repl. 1997). As part of its case-in-chief, the State sought to demonstrate the appellant's motive and intent for the commission of the offense. The admission of evidence showing motive is a matter left to the discretion of the trial court, which will be reversed only for an abuse of that discretion. *E.g., Martin v. State*, 328 Ark. 420, 944 S.W.2d 512 (1997). In *Howard v. State*, 348 Ark. 471, 79 S.W.3d 273 (2002), we reiterated the long-held rule that where the purpose of evidence is to disclose a motive for killing, anything and everything that might have influenced the commission of the act may, as a rule, be shown. *Id.* at 494, 79 S.W.3d at 287.

At trial, the State adduced evidence regarding the planning and commission of the robbery and shooting death of Alfredo Resendiz. This evidence came largely from the statements made by appellant to the police. The evidence established that, after learning that the victim carried money, appellant's motive was to rob the victim. However, appellant claimed that the victim was shot as the result of his firearm accidentally discharging. The appellant claims that evidence that he was apprehended outside a liquor store after having just made a purchase was more unfairly prejudicial than probative. While the appellant claims that evidence of the circumstance of his arrest was not "narrowly" drawn, the State submits otherwise. We agree with the State.

Testimony indicated that the victim was shot on the night of October 27, 2000, and that police responded at approximately 9:30 p.m. After interviewing witnesses at the scene, the appellant was sought in connection with the shooting. Scott Bridgeman, an officer with the Newport Police Department, testified that he apprehended appellant in the company of another person also sought, as the two, on that same night, were leaving a Newport liquor store where they had just purchased several bottles of wine.

The purchase of wine being a legal act in Newport, Arkansas, the appellant's assertion begs the question of how his apprehension there could be deemed prejudicial. That he would be making such a purchase on the same night that he had robbed and gunned down his victim in the middle of a city street, however, is highly probative of his intent to rob and his motive for doing so. The circumstances that tie a defendant to the crime or raise a possible motive for the crime are independently relevant and admissible as evidence. *E.g., McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). It is far-fetched to suggest that a jury would convict a defendant of first-degree murder solely on the ground that he was a wine addict. Had there been the remotest possibility that the jury would have based the appellant's conviction solely on the location of his arrest, he could have requested that an instruction be given, instructing the jury as to the purposes for which it could consider the admitted evidence. Appellant requested no such instruction. As such, we find no error with regard to any testimony about the location of appellant's arrest.

### III.   Interpreter

The appellant's final point on appeal is whether the trial court erred in employing a noncertified foreign-language interpreter to assist in translating some of the responses of family members of the victim during the sentencing phase of his trial. Based upon this fact alone, appellant contends that his sentence should be reversed and remanded for a new sentencing hearing. We disagree.

The appellant was found guilty of first-degree murder, and the trial proceeded to sentencing, at which time, the State called Jose Resendiz, brother of the victim. Resendiz testified in English and served as the representative of the family. In that capacity, Resendiz proffered a document, written in Spanish, by family members that corresponded to a written English translation. Both the document written in Spanish and the one in English (State's Exhibits Nos. 29 and 30) were admitted *without objection* from appellant. Prior to Resendiz reading from the victim-impact statement, the trial court summoned Ms. Isaac to the witness stand in order for her to affirm the translation of the written responses. At that time, defense counsel waived reading of the oath to Ms. Isaac; however, the trial court subsequently placed Ms. Isaac under oath and received an affirmation from her that her translation accurately reflected the responses of the witness(es).

It does not appear that the prosecutor proffered Ms. Isaac as a certified interpreter or that the trial court qualified her as a non-certified court interpreter pursuant to this Court's directives. It does appear, however, that Ms. Isaac's principal role was to explain court proceedings to members of the victim's family. It does not appear that Ms. Isaac was called upon to translate in the usual question-and-answer format normally conducted during direct and cross-examination of witnesses. As such, we find no error in her limited participation.

In short, Ms. Isaac was not called upon to translate in the usual question-and-answer format; moreover, both the document written in Spanish and the one in English were admitted *without objection* by appellant; as such, we affirm the trial court's admission of such documents and find no error in Ms. Isaac simply

affirming that her translation accurately reflected the responses of the witness(es)' statements offered in written documents to which no objection was made.

### IV. Rule 4-3(h) Compliance

The record has been reviewed for prejudicial error pursuant to Ark. Sup. Ct. R. 4-3(h), and no reversible errors were found.

Affirmed.