Calvin MORRIS *v.* STATE of Arkansas

CR 03-1370                                                193 S.W.3d 243

Supreme Court of Arkansas
Opinion delivered September 23, 2004

*William R. Simpson, Jr.*, Public Defender, and *Bret Qualls*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Calvin Morris appeals his conviction for first-degree murder and his sentence to sixty years' imprisonment. This court previously reversed and remanded Morris's earlier conviction for first-degree murder and sentence to forty years' imprisonment in *Morris v. State*, 351 Ark. 426, 94 S.W.3d 913 (2003) (*Morris I*). His sole point on appeal in the instant case is that the circuit court erred in allowing the State to cross-examine him regarding a tattoo on his right shoulder, which read

"Death Before Dishonor." Morris argues that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice to him. We disagree and affirm the judgment of conviction.

The facts of this case can be gleaned from *Morris I.* To summarize, Calvin Morris testified that Chris Sharp, the murder victim, came close to hitting him with his vehicle in the parking lot of a Little Rock nightclub. An argument followed, and at some point, a gunshot was fired by a member of Morris's group from the Morris car. Later, the two cars were side by side near the intersection of Asher and University Avenues. According to his testimony, Morris believed he saw a gun pointed at him from the other car and panicked. He shot into the Sharp car two or three times, striking the driver, Chris Sharp, and killing him.

Following this court's reversal and remand in *Morris I,* defense counsel moved the circuit court *in limine* to exclude any reference to Morris's tattoo. Counsel asserted that the probative value of the tattoo evidence was outweighed by the danger of unfair prejudice. The prosecutor responded that the tattoo was probative of Morris's motive and state of mind in the shooting. More specifically, the prosecutor argued that it was probative of the fact that Morris "was mad; he was dishonored; he wasn't going to take it." The prosecutor further asserted that in his previous trial, several witnesses testified to Morris's peacefulness and that his tattoo was evidence countering that. The circuit court denied Morris's motion.

At trial, the State called Courtney Grandy, who had been in Morris's car, as a witness. On cross-examination, defense counsel elicited from Grandy that he believed Morris was a peaceful person. Calvin Morris took the stand in his own defense, and he was cross-examined by the prosecutor about his tattoo. At that time, defense counsel objected to the questioning, and the circuit court overruled the objection. No redirect examination was conducted regarding the tattoo. The prosecutor made several references to the tattoo in his closing arguments without objection by defense counsel.

Morris argues, as his only point on appeal, that despite the fact that he put his peaceful character into issue, his tattoo had no probative value and suggested he had a propensity to kill people who offended him. Moreover, he emphasizes that the State failed to prove that Morris wore the tattoo at the time of the shooting. He maintains further that such propensity evidence is unfairly

prejudicial. He claims that the jury did not believe his testimony that he thought he was about to be shot because of the State's closing argument about his propensity to kill people who insulted him. In sum, he asserts that he was prejudiced by the State's tattoo references in two respects: (1) he was prejudiced by the jury's hearing evidence that had no probative value and was introduced solely to establish that he had the propensity to kill others who offended him; and (2) the jurors were tainted by this evidence. He urges that because of the tattoo argument, the jurors could not fairly consider his uncorroborated testimony establishing his justification defense.[1]

The State responds that this issue as it pertains to closing arguments was waived, because Morris did not object to the prosecutor's reference to the tattoo during those arguments. The State further urges that it offered evidence of Morris's tattoo to show his motive and intent for shooting into Sharp's car. It maintains that the tattoo expressed Morris's attitude and belief which caused him to react to the perceived dishonor the way he did. The State claims that the jury heard Morris's version of the shooting and was able to weigh the evidence of his motive and intent against his claim of self-defense. For all of these reasons, the State concludes that the circuit court did not abuse its discretion by allowing evidence and argument relating to the tattoo.

As an initial matter, we believe that this issue relating to the tattoo is preserved for appeal. While the State claims that the prosecutor's numerous references to the tattoo during the closing arguments were not objected to and, thus, not preserved for our review, it is mistaken. This court has frequently observed that where a pretrial motion *in limine* has been denied, the issue is

---

[1] Morris also contends in his opening brief that his argument and assertion of error are not barred by the doctrine of law of the case, anticipating that a law-of-the-case argument would be made by the State. It was not, and the State does not respond in its brief. This court has used the doctrine of law of the case to affirm a circuit court's decision where neither party raised the doctrine, and the circuit court did not rule upon it. *See, e.g., McAdams v. McAdams*, 357 Ark. 591, 184 S.W.3d 24 (2004) (citing *Landers v. Jameson*, 355 Ark. 163, 132 S.W.3d 741 (2003)). However, this court has also observed that matters that have not been decided explicitly or implicitly do not become law of the case merely because they could have been decided. *See Cloird v. State*, 352 Ark. 190, 99 S.W.3d 419 (2003). An example of when a matter has not been decided is when it is procedurally barred from appellate review. *See id.* Morris claims that the matter was not preserved in his first appeal, and this was not refuted by the State. Accordingly, law of the case does not foreclose our review of this matter.

preserved for appeal, and no further objection at trial is necessary. *See, e.g., Hale v. State*, 343 Ark. 62, 31 S.W.3d 850 (2000).

Turning to the merits, this court reviews asserted errors concerning the admission of evidence under the following standard of review:

> The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse a trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002); *Thomas v. State*, 349 Ark. 447, 79 S.W.3d 347 (2002). Moreover, we will not reverse absent a showing of prejudice. *Id.* Similarly, a trial court's ruling on relevancy is entitled to great weight and will not be reversed absent an abuse of discretion. *Clem v. State*, 351 Ark. 112, 90 S.W.3d 428 (2002).

*Martin v. State*, 354 Ark. 289, 299, 119 S.W.3d 504, 510-11 (2003).

Relevant evidence is defined in our Rules of Evidence as that evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Ark. R. Evid. 401 (2004). Although evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Ark. R. Evid. 403 (2004).

Morris relies on a Seventh Circuit Court of Appeals' opinion for the proposition that evidence of a tattoo is inadmissible when introduced to establish the defendant's propensity to commit a crime. *See United States v. Thomas*, 321 F.3d 627 (7th Cir. 2003). In that case, Thomas was convicted on two counts: (1) felon in possession of a firearm, and (2) possession of cocaine with intent to distribute. On appeal, he challenged, among other things, the admission into evidence of a photograph of a tattoo on his body of two revolvers crossing each other. The Seventh Circuit reversed the district court's decision to admit the photograph, holding that the photo could not have been admitted for any purpose other than to establish Thomas's propensity to possess guns and that he was the type of person who was likely to possess guns. The Seventh Circuit observed that while Thomas's tattoo may indicate that he knew that guns exist, such a revelation is of little, if any probative value, especially when balanced against the prejudicial effect the photograph may have had on the jury.

The Seventh Circuit did, however, note that Thomas had presented no defense with respect to the gun tattoo or evidence that he avoided possession of guns:

> . . . Here, Thomas presented no such defense, and the photo was entered into evidence during the prosecution's case-in-chief. The tattoo on Thomas's arm just shows that he wanted a gun tattoo. If a tattoo indicates ownership of an object, the mind reels at the legal and evidentiary consequences of the unicorns, dragons, mermaids, and other flights of fancy that decorate people's bodies.

321 F.3d at 633.

The *Thomas* case is distinguishable from the case at hand. Whereas Thomas did not put on a defense as to avoiding guns, here Morris did put on evidence of his peaceful nature. As previously noted, Courtney Grandy, a passenger in the Morris vehicle, testified for the State. He stated that Morris was mad after the first encounter between Sharp and him. However, on cross-examination by Morris's defense counsel, Grandy testified that based upon his experiences with Morris, he believed Morris to be a peaceful person. Later, Morris himself testified that he was angry about the incident in the parking lot. On cross-examination, he testified that he felt "disrespected" by Sharp and his passengers.

Hence, it was Morris, who placed his peaceful nature into issue and opened the door to contrary evidence being presented on that question. Because of this, it would certainly seem relevant for the State to introduce evidence that Morris wore a tattoo advocating death before dishonor as a counter to testimony about his peaceful nature. Moreover, Morris made no attempt to explain any other reason for wearing the tattoo and his defense counsel did not argue there was a different reason. There is another significant difference between this case and the *Thomas* case. Unlike the *Thomas* facts, Morris's tattoo was not referenced to establish his likelihood to possess a certain object. Rather, it was mentioned to show Morris's motive and state of mind in situations when he was disrespected.

It has long been the rule of this court that "where the purpose of evidence is to disclose a motive for killing, anything and everything that might have influenced the commission of the act may, as a rule, be shown." *O'Neal v. State*, 356 Ark. 674, 685, 158 S.W.3d 175, 183 (2004) (quoting *Matthews v. State*, 352 Ark. 166, 173, 99 S.W.3d 403, 408 (2003)). We have said that any circum-

stance that ties a defendant to the crime or raises a possible motive for the crime is independently relevant and admissible as evidence. *See Matthews v. State*, 352 Ark. 166, 99 S.W.3d 403 (2003).

As already noted in this opinion, the admission of evidence showing motive is a matter left to the discretion of the trial court which will be reversed only for an abuse of that discretion. *See Howard v. State*, 348 Ark. 471, 79 S.W.3d 273 (2002). Morris's tattoo read "Death Before Dishonor." Because Morris admitted that he felt "disrespected" by the victim, and because the victim was shot following an altercation between Morris and him, the tattoo appears to be probative of Morris's motive in the shooting, especially after the defendant put his peaceful nature into issue. Morris, of course, was entitled to his defense that the killing was accidental, and that he only shot towards the victim's car out of fear, but the State was equally entitled to put on evidence it believed shed light on Morris's motive and his intent to kill. We cannot say that the circuit court abused its discretion in denying Morris's motion *in limine* and in allowing the tattoo evidence at trial.

Affirmed.