2012 Ark. App. 184

**Daniel LEWIS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–341.**

Court of Appeals of Arkansas.

Feb. 29, 2012.

Danny Walter McCarter, Russellville, for appellant.

Dustin McDaniel, Atty. Gen., William Andrew Gruber, Little Rock, for appellee.

ROBIN F. WYNNE, Judge.

Appellant Daniel Lewis appeals following his convictions for aggravated robbery and theft of property, arguing that the trial court erred by denying his motion in limine and his motion for mistrial. We affirm.

The State charged Lewis with two counts of aggravated robbery and two counts of theft of property following a robbery at a Twin City Bank branch in southwest Little Rock on February 5, 2009. On that date, Lewis waived his *Miranda* rights and gave a voluntary statement in which he confessed to using a firearm to rob the bank and steal a car. Prior to trial, Lewis moved to suppress his confession, arguing that it was coerced. That motion was denied after a hearing. Lewis later filed a motion in limine to preclude the State from using his confession or, alternatively, to sanction the State for destroying potentially exculpatory evidence. In support of that motion, Lewis argued that the State failed to provide a copy of a surveillance video of the room where he had been held and interrogated.

During the hearing on the motion in limine, detectives testified that each interrogation room is monitored by a video/audio camera that records constantly but, due to technology constraints, records over itself every thirty days. Although there is no written policy with regard to the system, it is generally understood that it exists for administrative purposes in the event a suspect alleges a detective behaved inappropriately. In that case, the recording can be retrieved upon request, as long as the request is made within thirty days of the recording. The system is not used as an investigative tool. Detective Terrell Vaughn, who took Lewis's statement, testified that he did not rely on the surveillance system to record Lewis's confession; rather, he used a separate tape recorder. Detective Vaughn never went back and reviewed the surveillance video. To his knowledge, no allegation of mistreatment had been made by Lewis in the thirty days following his interrogation. Neither Detective Vaughn nor Sergeant Jim Lesher, who also testified at the hearing, had any reason to believe the surveillance system was not working on the day of Lewis's interrogation.

Ruling from the bench, the trial court denied Lewis's motion and found that the video recording in question did not exist. The court also found that, assuming the recording equipment was working properly on the day of the interrogation, Lewis should have requested a copy within thirty days if he believed something improper had taken place. Lewis then proffered testimony that he was locked in an interrogation room all day and that repeated requests for an attorney were denied. He alleged that, after several hours, the detectives paraded his girlfriend—who had been with him shortly before and after the robbery occurred—past his room and told him that if he did not give a statement, they would lock her up. He claimed that a female detective told him that his girlfriend would be locked up and his children would be taken away. Lewis stated that, at that point, he agreed to give a statement in exchange for the detectives releasing his girlfriend without charges. According to Lewis's proffered testimony, he

was arraigned in district court the very next day and spoke to the public defender about the circumstances surrounding his confession. However, it was not until almost two months later that his public defender filed a general motion for discovery on his behalf.

The case proceeded to a jury trial, and during the trial, the State sought to impeach Terri Pippins, Lewis's sister, based on bias. On cross-examination, the deputy prosecutor asked Pippins if she would ever do something to help her brother "escape," if she would bring him something he should not have, and whether she had attempted to smuggle contraband to Lewis when she hugged him or brought clothing for him the morning of the trial. Lewis objected to the questioning, and the court cautioned the prosecutor about bringing too much attention to the fact that Lewis was incarcerated pending trial. Lewis then moved for a mistrial, which was denied. The jury found Lewis guilty of all charges, and he was sentenced to a total of fifty years' imprisonment. This appeal followed.

### Motion in Limine

■ Lewis's first point on appeal is that the trial court erred by denying his motion in limine regarding the surveillance video. The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse a trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Morris v. State*, 358 Ark. 455, 458, 193 S.W.3d 243, 246 (2004). Moreover, we will not reverse absent a showing of prejudice. *Id.*

■ Lewis contends that the trial court erred by finding that the surveillance video "never existed." It is possible that Lewis misconstrues this ruling, because at no point did the trial judge say that the video "never existed." It is unclear from reviewing the transcript whether the judge found that the video *never* existed or that it *no longer* existed at the time Lewis requested a copy of it. In either case, the trial court properly denied Lewis's motion. The State is only required to preserve evidence that is expected to play a significant role in the defense, and then only if the evidence possesses both an exculpatory value that was apparent before it was destroyed and a nature such that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Autrey v. State*, 90 Ark.App. 131, 142, 204 S.W.3d 84, 89 (2005). To prove a due-process violation based on the destruction of potentially useful evidence, the defendant must also show bad faith on the part of the State. *Id.*, 204 S.W.3d at 90. At least two of these elements are not present in this case.

Although Lewis argues that the detectives' knowledge of the surveillance system's purpose meant they understood the video's exculpatory function, the record contains no evidence that any exculpatory value in this particular recording was apparent before its destruction. The testimony at the motion hearing indicated that no request for the video or allegation of misconduct had been made until well after thirty days had passed. The State could not have known at that time that the video would become important to Lewis's case. Lewis points to the testimony of a Federal Bureau of Investigations agent, Special Agent John Brunell, who stated that, prior to giving his statement, Lewis expressed concern about officers fabricating charges against his girlfriend. However, that testimony was taken at a different hearing—the hearing on Lewis's initial motion to suppress—several months before the surveillance video ever became an issue, and Special Agent Brunell did not

testify at the hearing on Lewis's motion in limine. Furthermore, the testimony itself does not support Lewis's argument. According to Special Agent Brunell, Lewis only expressed concern that his girlfriend would become involved; he did not indicate that he had been threatened with her involvement.

■ Furthermore, Lewis has not shown that the detectives acted in bad faith. We have held that a bare contention of bad faith, without supporting facts, does not demonstrate that the State acted in bad faith in destroying evidence. *Autrey*, 90 Ark.App. at 142, 204 S.W.3d at 90. Evidence that police followed standard operating procedures constitutes evidence that they acted in good faith. *Id.* Although Lewis contends that there was no official policy or procedure for the detectives to follow in this case, the testimony merely indicated that there was no *written* policy. Both Sergeant Lesher and Detective Vaughn testified regarding the system's purpose, who had access to the recordings, and under what circumstances the recordings would be retained. Therefore, a policy did exist, and from all accounts, the State followed that policy. Yet even if there had been no policy, Lewis has not cited to any authority to support his argument that "bad faith can and should be inferred from the lack of any official retention policy for these recordings." It is axiomatic that this court will not entertain an argument where there is no citation to authority or convincing legal argument. *Mills v. State*, 351 Ark. 523, 529, 95 S.W.3d 796, 799 (2003).

Also, Lewis argues that it places an unreasonable burden on defendants to require them to request a copy of the surveillance video within thirty days, and he points to the fact that his public defender did not file a motion for discovery until sixty-five days after the interrogation. We find this argument unpersuasive, as it requires the assumption that a defendant cannot request a copy of the video without the assistance of an attorney. That simply is not true. Even if it were true, Lewis himself admitted during his proffered testimony that he was arraigned the very next day after the interrogation and that he discussed the circumstances of his confession with a public defender at that time. Presumably, if Lewis believed that his confession had been coerced, he would have raised the issue at that time, well within the thirty-day limit. To the extent that he contends the assistance of an attorney was necessary to do that, it is clear he had access to that kind of assistance within twenty-four hours of giving the allegedly coerced statement.

### Motion for Mistrial

■ For his second point on appeal, Lewis argues that improper comments by the prosecuting attorney violated his right to a fair trial and that the trial court erred by not granting his motion for mistrial. A mistrial is a drastic remedy, to be employed only when an error is so prejudicial that justice cannot be served by continuing the trial and when it cannot be cured by an instruction to the jury. *Peters v. State*, 357 Ark. 297, 302, 166 S.W.3d 34, 36 (2004). The decision to grant a mistrial is within the sound discretion of the trial court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Id.* Among the factors we consider on appeal is whether the defendant requested a cautionary instruction or admonition to the jury, and the failure of the defense to request an admonition may negate the mistrial motion. *Bragg v. State*, 328 Ark. 613, 627, 946 S.W.2d 654, 662 (1997). The failure to give an admonition or cautionary instruction is not error where none is requested. *Id.* In addition,

we consider whether the prosecutor deliberately induced a prejudicial response. *Parker v. State*, 355 Ark. 639, 650, 144 S.W.3d 270, 276 (2004).

■ In this case, although Lewis moved for a mistrial after the offending questions had been asked, he did not request a cautionary instruction or admonition to the jury. This bars him from arguing that the court erred by not attempting to cure any prejudice the questions may have caused. Further, it is not apparent that the prosecutor deliberately attempted to induce a prejudicial response. The purpose of the questions was to impeach the witness, not to inform the jury that Lewis remained incarcerated pending resolution of the trial. In any event, any resulting error was harmless and would not warrant reversal. *See Tallant v. State*, 42 Ark.App. 150, 154, 856 S.W.2d 24, 26 (1993). The jury was presented with ample evidence proving Lewis's guilt, including his own confession. The prosecutor's reference to Lewis's pretrial incarceration was insignificant given the entire facts of the case.

Affirmed.

GLADWIN, J., agrees.

HART, J., concurs.

HART, J., concurring.

I agree that this case must be affirmed. I write separately because I have analyzed the case differently than the majority.

Regarding Lewis's argument about the destruction of "potentially useful evidence," I agree with the majority that the controlling authority is *Wenzel v. State*, 306 Ark. 527, 815 S.W.2d 938 (1991), and

that Lewis failed to demonstrate that all of the prongs in the tripartite *Wenzel* analysis were satisfied. However, I believe that the case was much closer than the majority suggests. I agree with Lewis that the exculpatory value of the evidence, if any, was apparent to the police at the time of the destruction.[1] Likewise, I agree that he was unable to obtain evidence comparable to the destroyed video.[2] However, the record fails to show that the police acted in bad faith. Although no formal retention policy existed, there was likewise no proof that anything had occurred besides the recording being taped over on the regular thirty-day cycle. Accordingly, I believe that the case-at-bar is analogous to *Autrey v. State*, 90 Ark.App. 131, 204 S.W.3d 84 (2005). I decline to subscribe to Lewis's contention that bad faith should be inferred from the lack of any official retention policy.

I have also analyzed differently Lewis's argument that the trial court erred in denying his motion for a mistrial—I believe that the situation was properly handled by the trial court. It is not apparent that the prosecutor was deliberately attempting to elicit a response from the witness that would draw undue attention to the fact that Lewis was incarcerated prior to trial. The question was asked to impeach the witness, essentially inquiring whether the witness might do anything she could—legally or illegally—to help her brother. Nonetheless, the trial judge cautioned the prosecutor and ended that line of questioning. It is settled law that a trial court has "wide latitude of discretion" in the control of a trial. *Richmond v. State*, 302 Ark. 498, 791 S.W.2d 691 (1990). Moreover, the trial judge is in a better position to evalu-

---

1. Obviously, if the police coerced Lewis's confession, they were aware of their actions.

2. An actual video record of the events is qualitatively different from the testimony of inter-

ested parties. It had the potential to provide, to borrow a phrase from the world of football, "indisputable video evidence."

ate the prejudicial effect of the question than an appellate court. *Id.* Accordingly, I believe that we need not bar Lewis's argument or engage in harmless-error analysis—I contend there was no trial error in denying a mistrial.