# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,        :
       :      ID No. 1508010489
    v.        :      In and For Kent County
       :
ABDUL T. WHITE,        :
       :
    Defendant.        :

## MEMORANDUM OPINION AND ORDER

Submitted: June 2, 2017
Decided: July 20, 2017

**Upon the State's Motion *in limine* - GRANTED**

Jason Cohee, Esquire, and Lindsay Taylor, Esquire, DEPARTMENT OF JUSTICE, Dover, Delaware, *for the State.*

Edward Gill, Esquire, LAW OFFICE OF EDWARD C. GILL P.A., and Alexander Funk, Esquire, CURLEY, DODGE & FUNK, LLC, Dover, Delaware, *Attorneys for Defendant.*

Clark, J.

## I.    Introduction

Before the Court is the State's Motion *in Limine* seeking to admit evidence of a tattoo reading "Duct Tape Bandit" located on the stomach of Defendant Abdul White (hereinafter "Mr. White").  The State charged Mr. White with Murder First Degree, Robbery First Degree, and Home Invasion along with various other crimes.  Because the perpetrators used duct tape during the commission of these crimes, the State seeks to offer evidence of Mr. White's "Duct Tape Bandit" tattoo at trial in order to establish identity, intent, and motive.  Mr. White seeks to have this evidence excluded (1) as prohibited character evidence; (2) because the prejudicial effect of the tattoo substantially outweighs its probative value; and (3) as a violation of his constitutional rights.  For the reasons set forth below, the State's Motion *in Limine* is GRANTED.  Assuming the State can lay a proper foundation, the State may offer the tattoo for the limited purpose of showing identity, intent, and motive.  The Court, upon request, will issue an appropriate limiting instruction, and the State must redact the picture so that Mr. White's other tattoos are not visible.

## II.    Background and Arguments of the Parties

The facts cited herein are those identified in the affidavit of probable cause accompanying the search warrant and as proffered by the State in its motion and at oral argument.  On August 8, 2015, the police responded to a home invasion in Milford after three intruders wearing dark clothes and dirt bike style masks entered the home.  The intruders ordered nine people in the house to lay on the floor in the living room and then held them at gunpoint.  One of the intruders secured a tenth person with duct tape and also held that person at gunpoint in the living room.  While two of the intruders held these people, one of the three intruders kept John Harmon (hereinafter "Mr. Harmon") in his bedroom.  The intruder duct taped Mr. Harmon to his wheelchair and

2

then fatally shot him in the head. The three men then fled the residence. The police developed Mr. White as a suspect and arrested him for these offenses.

The State filed a motion *in limine* seeking to introduce evidence of Mr. White's tattoo at trial and evidence of other crimes where Mr. White allegedly committed previous home invasions and robberies with a similar *modus operandi*. In seeking to admit evidence of the prior crimes and the tattoo, the State primarily relied on Delaware Rule of Evidence 404(b)(hereinafter "Rule 404(b)"). Prior to oral argument, the State withdrew its request to introduce evidence of other bad acts and now seeks to introduce only evidence of the tattoo pursuant to Rule 404(b). The State also seeks to use this evidence to identify Mr. White as a perpetrator involved in the robbery. The State argues that there will be evidence that the home invasion and robbery involved the use of duct tape. The State argues that because the person responsible for the home invasion and robbery used duct tape, Mr. White's tattoo is highly probative of the identity of the perpetrator of this crime. Therefore, the State argues that the Court should permit it to use this as evidence of identity, an exception to the general rule that character evidence is inadmissible.[1]

Mr. White opposes the State's use of this evidence. He argues that the use of this evidence demands wild, unfair, and prohibited speculation by the jury as to Mr. White's character and prior conduct. Accordingly, Mr. White argues that the Court must exclude such evidence under Delaware Rule of Evidence 403 (hereinafter "Rule 403"). For this proposition, Mr. White cites *State v. Sterling* where the Delaware Superior Court prohibited the State from introducing evidence of the defendant's

---

[1] Under the Delaware Rules of Evidence, character evidence is inadmissible to show that the defendant acted in conformity with his character. D.R.E. 404(a). However, the Rules permit evidence of other crimes, wrongs, or acts to show "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." D.R.E. 404(b).

nickname because it called for the jury to draw prejudicial inferences as to the defendant's criminal disposition.[2]

Mr. White also argues that this evidence is impermissible character evidence that the State is not offering for a permissible purpose under Delaware Rule of Evidence 404(b). Moreover, Mr. White maintains that the Court cannot admit the tattoo under 404(b) because the *Getz* factors are not satisfied.[3] Namely, Mr. White argues that the tattoo is not material to an issue or ultimate fact in dispute; that the tattoo is not "plain, clear, and conclusive;" that there is no evidence as to timing of the tattoo; and that the probative value is outweighed by its unfair prejudicial effect under Rule 403. Additionally, Mr. White seeks to prevent the State from admitting the evidence on constitutional grounds. He argues that admitting this evidence would violate the Sixth Amendment's Confrontation Clause. Finally, Mr. White argued in his written motion and at oral argument that evidence of his tattoo is inadmissible hearsay.

## III. Discussion

After reviewing the parties' submissions and arguments, the Court finds that the admissibility of the tattoo is not properly analyzed under Delaware Rule of Evidence 404(b). Instead, because the tattoo constitutes an admission and is therefore non-hearsay under relevant law and the rules of evidence, the balancing test set forth in Rule 403 ultimately governs its admissibility. Under this standard, the tattoo's unfair prejudicial effect does not substantially outweigh its probative value. Additionally, since the tattoo is an admission by a party, it does not violate Mr. White's constitutional rights.

---

[2] 2017 WL 384083, at *3 (Del. Super. Ct. Jan. 26, 2017).

[3] The Delaware Supreme Court enumerated guidelines to govern admissibility of character evidence pursuant to Rule 404(b). *Getz v. State*, 538 A.2d 726, 734 (Del. 1988).

4

## A. Mr. White's tattoo cannot be characterized as a prior crime, wrong, or act that falls under Delaware Rule of Evidence 404(b).

The bulk of the parties' submissions and arguments centered on a Rule 404(b) analysis. This is most likely because the State's initial motion included evidence of prior crimes that Mr. White allegedly committed in a similar fashion to the manner in which the perpetrators carried out this crime. Had the State brought such evidence before the Court, it would have properly analyzed those prior crimes under Rule 404(b). Under such circumstances, it is possible that the Court would have admitted evidence of his tattoo as evidence of those prior crimes under a Rule 404(b) analysis as well. However, the State withdrew its motion to introduce such evidence. Standing alone, the tattoo is not properly considered to be a prior crime, wrong, or act.[4]

The Court finds support for this conclusion in the Delaware Supreme Court decision in *Watson v. State*.[5] In the *Watson* case, the prosecutor sought to introduce evidence of the defendant's prior crimes *and* evidence of his tattoo under Rule 404(b).[6] The Delaware Supreme Court analyzed the defendant's prior crimes under Rule 404(b), but evaluated the admissible tattoo evidence solely under Rule 403.[7] Similarly here, a 404(b) analysis is inappropriate. The Court must instead examine the tattoo under other relevant rules of evidence.

---

[4] *E.g.*, *People v. Cardenas*, 338 P.3d 430, 438 (Colo. App. 2014) (holding that a defendant's tattoo is relevant in terms of it being a remark instead of character evidence under Colorado's Rule of Evidence 404(b)); *State v. Mediz*, 2014 WL 5391985, *1 n.1 (Ariz. Ct. App. Oct. 22, 2014) (stating that a tattoo "is not a crime, wrong, or an act" that can be analyzed under Arizona's Rule of Evidence 404(b)).

[5] 2015 WL 1279958 (Del. Mar. 19, 2015).

[6] *Id.* at *2.

[7] *Id.* at *3–4.

## B. The tattoo constitutes an admission by a party opponent.

The defense claims that the tattoo is inadmissible hearsay. The Court disagrees. While the Court recognizes that the State is clearly offering the tattoo for the truth of the matter asserted thereby implicating a hearsay analysis,[8] the Delaware Rules of Evidence define this as non-hearsay.[9] Accordingly, the Court views Mr. White's tattoo as an admission by a party opponent because it constitutes a statement he made himself or is one that he adopted.

Delaware's evidence rules provide that a statement made by the defendant either in his individual or in a representative capacity constitutes a party-admission.[10] The rules of evidence define a statement as "an oral or written assertion."[11] Mr. White's tattoo clearly fits this definition of a statement because it is a written assertion. Accordingly, it constitutes an admission if it fits within any of the definitions set forth in Rule 801(d)(2). Here, either Mr. White tattooed this statement on himself, making it his own statement, or he allowed or instructed a tattooist, acting as his representative, to tattoo this statement onto his body. Under either set of circumstances, this tattoo constitutes a statement that is a party-admission and is therefore non-hearsay.

Furthermore, even assuming that the Court cannot view this as Mr. White's own direct admission without the facts surrounding the inking of the tattoo, the Court is convinced that it would still qualify as an adoptive admission. Consequently, it still constitutes non-hearsay. Rule 801(d)(2)(B) provides that when a "statement is offered against a party and is . . . a statement of which he has manifested his adoption or belief in its truth . . .", that statement is not hearsay.[12] When the circumstances surrounding

---

[8] D.R.E. 801(c).

[9] *Id.* at 801(d)(2).

[10] *Id.* at 801(d)(2)(A).

[11] *Id.* at 801(a).

[12] *Id.* at 801(d)(2)(B).

a statement by someone other than the declarant evidence that the party manifested his adoption or belief in the statement, it is admissible as non-hearsay pursuant to the Delaware Rules of Evidence.[13] That Mr. White acquired this tattoo and has not tried to cover it with a different tattoo or remove it completely is evidence that he has manifested his adoption or belief in the statement. Therefore, the court is convinced that even if this did not constitute an admission made by Mr. White himself or by another in a representative capacity, it is clearly an adopted admission. Pursuant to the rules of evidence, under either set of circumstances, it is non-hearsay.

### C. The admission of this evidence does not violate Mr. White's Constitutional right to confront witnesses against him.

In one sentence in Mr. White's response to the State's motion, in a conclusory manner, he states that this evidence will violate his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article I, section 7 of the Delaware Constitution. However, Mr. White does not provide any factual or legal analysis in support of this argument. Nor does he cite to any relevant case law to support his argument. Mr. White did not expand on this proposition at the oral argument either.

Regardless, as the Court finds that the tattoo qualifies as a party-admission, the admission of this evidence does not violate Mr. White's constitutional right to confront witnesses against him.[14] It is clear that the Confrontation Clause does not apply to

---

[13] *See Swan v. State*, 820 A.2d 342, 353 (Del. 2003) (holding that the defendant adopted a declarant's statement regarding the defendant's guilt because the surrounding circumstances manifested that the defendant believed the declarant's statements were true and were therefore treated as a party-admission).

[14] *See United States v. Jones*, 314 Fed. Appx. 883, 886 (7th Cir. 2009) (holding that the Sixth Amendment's Confrontation Clause is only implicated by testimonial statements; party-admissions are non-testimonial and therefore do not implicate the Sixth Amendment); *United States v. Jones*, 205 Fed. Appx. 327, 342–343 (6th Cir. 2006) (holding that a party-admission is non-testimonial and therefore does not violate the Confrontation Clause).

party-admissions.  The Supreme Judicial Court of Maine aptly explained the rationale for this principle:

> [The Confrontation Clause] is the guarantee of opportunity for cross-examination, to expose the possible unreliability of evidence.  Since however, the traditional common law rationale for receiving the extra-judicial admission of a party in evidence against him is that a party cannot object to his failure to have a chance to cross-examine himself i.e. to confront himself . . . there is no reasonable basis for applicability of the confrontation Clause as to a party's admission.[15]

As this is an admission by a party opponent, this evidence does not implicate Mr. White's right to confront witnesses.


### D. Any unfair prejudice does not substantially outweigh the evidence's probative value; therefore, the evidence is admissible under Delaware Rule of Evidence 403.

As the Court finds that Mr. White's tattoo constitutes a party-admission making it non-hearsay and that it is not appropriately analyzed under Rule 404(b), the Court turns to Rule 403 to determine whether the evidence is admissible.  Notwithstanding the evidence's potential admissibility as non-hearsay, the Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of unfair prejudice."[16]  Evidence is unfairly prejudicial when it creates an "undue tendency to suggest that the jury will render an adverse decision based on emotional grounds, instead of properly weighing the evidence."[17]

---

[15] *State v. Kimball*, 424 A.2d 684, 688 (Me. 1981) (citations omitted).

[16] D.R.E. 403.

[17] *Gallaway v. State*, 65 A.3d 564, 571 (Del. 2013) (quoting *Williams v. State*, 494 A.2d 1237, 1241 (Del. 1985)).  *See also United States v. Gibbs*, 182 F.3d 408, 429 (6th Cir. 1999) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)) (noting that "[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis").

A defendant's tattoo can be relevant and probative to his identity as the person who committed the crime. In arguing that the tattoo was admissible under Rule 404(b), the State maintained that the tattoo is relevant to the identity of the person who committed the robbery. While the proper analysis is under Rule 403 rather than Rule 404(b), evidence tending to show the identity of a person who committed the crime must be weighed pursuant to Rule 403 as well. Here, the State maintains that this tattoo is probative regarding the identity of the person who committed the robbery while using duct tape. Mr. White counters that identity is not an issue in the case because he previously confessed to the underlying robbery.

While Mr. White may have confessed to the commission of the robbery that occurred in conjunction with the murder, the identity of the robber remains an issue in the case.[18] Mr. White has not pled guilty to this charge, and therefore, the State maintains its burden of proving beyond a reasonable doubt that Mr. White was the person who committed the home invasion and robbery that accompanied the murder. Moreover, identity is particularly at issue here because of the manner in which the perpetrators carried out this crime. All three participants entered the house wearing disguises. Under such circumstances, the State should be permitted to establish identity with other admissible evidence. Here, the tattoo is circumstantial evidence of the identity of one of the perpetrators.

Relevant evidence is any evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or

---

[18] *See State v. Sanchez*, 635 P.2d 1217, 1222 (Ariz. Ct. App. 1981) (holding that the defendant's tattoos were properly admitted evidence showing the defendant's identity as the person who committed the crime despite the defense's argument that identity is not an issue; the evidence was admissible because the prosecutor had to prove this element of the crime). While in the *Sanchez* case the defendant did not admit to his part in the crime, the Court does not believe that this distinction changes the outcome because the State is still required to prove that Mr. White was the one who committed the robbery crime. The State is permitted to prove this element with any admissible evidence including the tattoo.

less probable than it would be without the evidence."[19]  The State argues that the tattoo is evidence of identity because having this tattoo makes it more probable that Mr. White committed the robbery.  The State maintains that the commission of this crime involved the use of duct tape, and therefore, the perpetrator committed the crime in the same fashion as that indicated by Mr. White's tattoo.  In essence, this is a common plan or scheme argument in that the manner in which the perpetrator carried out this crime was unique to a specific individual.  Therefore, someone with a tattoo claiming to carry out similar crimes in a similar fashion makes it more probable that the person with the tattoo committed this specific crime.

The Court recognizes that this argument would be stronger had the State offered evidence of Mr. White's previous crimes that involved the use of duct tape.  However, despite the lack of evidence of prior crimes carried out in a similar fashion, looking at the plain meaning of Mr. White's tattoo, "Duct Tape Bandit," one cannot read it, using common sense, to mean anything other than what it says: that he commits crimes similar to that of robbery with the use of duct tape.  For purposes of a Rule 403 balancing test, the Court finds that this evidence aptly meets the relevancy threshold and is highly probative of identity.

Furthermore, a defendant's tattoo can also be probative of his intent and motive to commit a crime. [20]  The Delaware Supreme Court's decision in *State v. Watson*, is

---

[19] D.R.E. 401.

[20] *State v. Watson,* 2015 WL 1279958 (Del. Mar. 19, 2015) (Slip Op.); *Roth v. State*, 788 A.2d 101, 111 (Del. 2001) (holding that it was proper for the trial court to admit testimony describing a defendant's tattoo of a gun on his back and the words "No Limit," when the defendant's aversion to firearms was at issue).  *See United States v. Pierce*, 785 F.3d 832, 841 (2d Cir.), *cert. denied*, 136 S. Ct. 172, 193 L. Ed. 2d 139 (2015), and *cert. denied sub nom. Colon v. United States*, 136 S. Ct. 213, 193 L. Ed. 2d 163 (2015), and *cert. denied sub nom. Meregildo v. United States*, 136 S. Ct. 270, 193 L. Ed. 2d 198 (2015) (admitting evidence of a tattoo which meant "Young Gunnaz Killer" where tattoo evidence helped to "establish [defendant's] motive for violence against the Young Gunnaz," a rival gang); *Slavin v. Artus*, 413 Fed. Appx. 380 (2d Cir. 2011) (allowing admission of a defendant's "white supremacist tattoos to establish motive and intent"); *Morris v. State*, 358 Ark. 455 (2004)

apposite to the facts here. In *Watson*, the defendant was on trial for shooting at a police officer's home.[21] The *Watson* court admitted into evidence depictions of the defendant's tattoo which read "187."[22] Testimony was heard explaining that "187" meant "officer down," *i.e.*, the murder of a cop, and was a motto that the defendant lived by.[23] The *Watson* court held that the tattoo "evidence was highly probative in proving [the defendant's] intent and motive in shooting at [the officer's] home, and was not outweighed by any alleged prejudice."[24]

Similarly here, the tattoo reading "Duct Tape Bandit" tends to show Mr. White's motive, intent, and state of mind, in entering the home and committing certain acts therein. Unlike in the *Watson* case where testimony was needed to establish the tattoo's meaning, here no such testimony is required. Mr. White's tattoo has a plain and clear meaning without testimony providing such context. The Court finds the tattoo evidence is highly probative to prove matters relevant to the State's case-in-chief. Mr. White stands accused of several serious felonies, a number of which have intent as a factor, which the State bears the burden of proving in its *prima facie* case. [25]

While the Court recognizes that evidence of tattoos can be prejudicial, here there is minimal risk of *unfair* prejudice. Any harm to Mr. White's case caused by admitting this tattoo evidence will likely be due to the legitimate probative force of the evidence, as it indicates his identity, intent, or motive to commit certain criminal acts through the use of duct tape. Accordingly, the Court finds that any potential unfair prejudice does

---

(admitting a tattoo reading "Death Before Dishonor" where the defendant's motive and state of mind in situations where he was disrespected was at issue).

[21] *Watson*, 2015 WL 1279958, at *4.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *E.g.,* home invasion requires the state to prove that a defendant entered a home with "intent to commit a crime therein," 11 *Del. C.* § 826(a).

not substantially outweigh the evidence's probative value. Moreover, any unfair prejudice can be significantly mitigated by an appropriate limiting instruction. Therefore, notwithstanding Rule 403, the evidence will be admissible at trial provided that facts are admitted in evidence tending to show that the perpetrators carried out these crimes with the use of duct tape as alleged by the State.

## IV. Conclusion

For the reasons set forth above, evidence of Mr. White's tattoo is admissible for the limited purpose of proving identity, intent, and motive. The Court will issue a limiting instruction, at Mr. White's request, to ensure that the jury does not consider this evidence for any improper purpose. Since the photograph included with the State's proffer includes a picture of Mr. White showing various other tattoos including one depicting a gun and another reading "Death Before Dishonor," which the State has not sought to admit, the State must redact any photos of Mr. White's tattoo. This will ensure that none of Mr. White's other tattoos are visible to the jury or otherwise presented to them.

**IT IS SO ORDERED**

/s/Jeffrey J Clark
Judge

12